Argued December 6, 1933; reversed January 9; rehearing denied
January 30, 1934

## CALIFORNIA WESTERN STATES LIFE INSURANCE CO. *v.* MARSTERS ET AL.

(28 P. (2d) 233, 28 P. (2d) 878)

*William H. Trindle,* of Salem (George A. Rhoten, of Salem, on the brief), for appellants.

*C. E. McLaughlin and Porter McLaughlin,* both of Sacramento, Cal., and *Chas. T. Haas,* of Portland, for respondent California Western States Life Ins. Co.

*Allan G. Carson,* of Salem (M. F. Rice, of Roseburg, and Carson & Carson, of Salem, on the brief), for respondent Effa L. Marsters.

CAMPBELL, J.   On April 3, 1912, Edward Raymond Marsters, then unmarried, had his life insured, in a 20-year life insurance policy in the sum of $2,000 in favor of his mother, Effa L. Marsters, the insured reserving the right to change the beneficiary at any time.  Sometime thereafter, the insured was married to Bertha H. Marsters and on August 6, 1921, he had the beneficiary in said policy changed to his wife, said Bertha H. Marsters.  The issue of this marriage was a daughter, Hazel Marsters Turnidge, who has reached her majority, and a son, Kenneth Marsters, a minor of the age of 16 years at the time of the filing of his answer herein and for whom George A. Rhoten was duly appointed guardian *ad litem.*

On March 30, 1925, Edward Raymond Marsters, the insured, was, by an order of the county court of Douglas county, Oregon, declared to be insane and on that date committed to the Oregon State Hospital for the Insane where he was confined until his death, November 20, 1931.

In April, 1927, his wife, Bertha H. Marsters, the beneficiary named in the insurance policy at the time the insured was committed to the asylum, secured a divorce from him and subsequently married a Mr. Woodward. In July, 1931, without notice to said insane patient, the county court of Douglas county made an order appointing Effa L. Marsters, his mother, guardian of his person and estate. Thereafter on petition of said guardian, also without any notice, said county court made an order in which the court recited, among other things, the commitment of the insured to the asylum for the insane, the divorce and subsequent marriage of Bertha H. Marsters to Harry H. Woodward, then proceeded:

"IT FURTHER APPEARING TO THE COURT that petitioner, Effa L. Marsters, has conferred with the said Edward R. Marsters, also known as Raymond E. Marsters, whom in her estimation converses and talks very intelligently, and that it is his desire and wish that the beneficiary in said policy of insurance be changed to his mother, the petitioner herein.

"IT FURTHER APPEARING TO THE COURT that it would be to the best interest of said incompetent that his mother, the petitioner herein, be made beneficiary under said policy, and placed in possession of said policy, in order to assist the said incompetent with the necessaries of life, for which the State of Oregon does not supply.

"AND IT FURTHER APPEARING that it is not the desire and wish of the incompetent that his former wife, the said Bertha H. Marsters, remain beneficiary under said policy, and that said beneficiary had been

notified by her attorney, the said Wm. H. Trindle, of Salem, Oregon, that demand has been made upon him for a surrender of said policy.

"IT IS NOW, THEREFORE, this 7th day of August, 1931, ordered that said Effa L. Marsters be named as beneficiary under the above named policy of insurance, and that the name of Bertha H. Marsters, as beneficiary thereunder be discontinued.

"AND IT IS FURTHER ORDERED that Effa L. Marsters be placed in possession of said policy of insurance."

Shortly after the death of the insured, the probate court of Marion county appointed the Ladd and Bush Trust Company of Salem, Oregon, as administrator of the estate of said deceased and who claimed the amount due on the policy. Effa L. Marsters also made claim upon the insurance company for the amount due on the policy. Thereupon the insurance company, as plaintiff, filed this suit alleging that it did not know to whom the money should be paid and tendered the amount into court asking that Effa L. Marsters and the other defendants be impleaded and the court determine and distribute the fund to the rightful claimants.

To this complaint the defendants, Hazel Marsters Turnidge, Kenneth Marsters, by his guardian, George A. Rhoten, Bertha H. Woodward, and the Ladd and Bush Trust Company, filed an answer which in effect admitted all the allegations of the complaint. In a further and separate answer in the nature of a complaint they attacked the claim made by Effa L. Marsters and alleged:

"That on or about the 7th day of August, 1931, the defendant Effa L. Marsters, pretending to act as the duly appointed and qualified guardian of said Edward Raymond Marsters, caused a certain petition to be filed in the county court of Douglas County, Oregon,

and caused a pretended order to be made and entered by the Honorable W. S. Hamilton, county judge of Douglas County, Oregon, substantially in the form set out and described in Plaintiff's Complaint as 'Exhibit A', by virtue of which said pretended order of said County Court defendant Effa L. Marsters attempted to cause a change of beneficiary to be made in the life insurance policy set out and described in Paragraph V of this Answer and Cross-complaint, so that the proceeds of said policy at the time of the death of said Edward Raymond Marsters would be payable to the defendant Effa L. Marsters personally and as her sole and exclusive property and estate.

## "X

"That said pretended order and the pretended order appointing Effa L. Marsters such guardian are null and void for the reason that the same were made ex parti, without any notice of any kind or character being given to Edward Raymond Marsters, or the defendants Hazel Marsters Turnidge and Kenneth Marsters as required by statute, and for the further reason that the same is an attempt upon the part of the defendant Effa L. Marsters to personally profit by said order at the expense and to the detriment of the estate of Edward Raymond Marsters.

## "XI

"That said Bertha H. Marsters, now known as Bertha H. Woodward, appears as one of the answering defendants in this Answer and waives all rights and claims to said insurance policy and consents and directs that the fund held by the Clerk of this Court shall be paid to Ladd & Bush Trust Company, Administrator of the estate of Edward Raymond Marsters, to be administered by it as by law required, and upon the closing of the administration to be paid to defendants Hazel Marsters Turnidge and Kenneth Marsters, as heirs at law of said Edward Raymond Marsters."

To this answer, defendant Effa L. Marsters filed a demurrer on "the ground and for the reason that

the same does not state facts sufficient to constitute a cause of suit against said defendant Effa L. Marsters''.

The court sustained the demurrer, and, the defendants refusing to further plead, judgment was entered requiring the clerk of the court to pay the defendant, Effa L. Marsters, the sum due on the policy and dismissed the cross-complaint of the other defendants from which said other defendants take this appeal.

■ The questions presented in the pleadings and involved herein are: Did the county court have jurisdiction to appoint the defendant Effa L. Marsters guardian of the person and estate of the insured without notice to the insured and if she was so lawfully appointed, did the county court, without notice to the insured, have the authority to authorize the change of the beneficiary in the insurance policy? The question of the legality of the divorce is not presented nor is the jurisdiction of the Marion county court to administer on the estate called in question.

It will be observed that the appealing defendants' answer asserted that defendant Effa L. Marsters was appointed as such guardian without notice to the insane or incompetent insured. Defendant's demurrer admits the facts in the answer and cross-complaint.

"When the relations or friends of any insane person, or any other persons, inhabitants of the county in which such insane person resides, shall apply to the county court by petition in writing, to have a guardian appointed for him, the judge shall cause notice to be given to the supposed insane person of the time and place appointed for hearing the case, not less than ten days before the time so appointed; and if, after a full hearing, it shall appear to the judge that the person in question is incapable of taking care of himself, the judge shall appoint a guardian of his person and estate, with the powers and duties hereinafter specified." Oregon Code 1930, § 11-1311.

The foregoing statute was enacted by the territorial legislature in the year 1853. Prior to that time, the territory had made no provision for the care of the insane and the mentally incompetent. The above act authorized the several county courts, on a proper petition, and upon due notice, to hold a hearing upon the question of the sanity of the person against whom the petition was filed. If, after a full hearing, the court was of the opinion that the person in question "was incapable of taking care of himself, shall appoint a guardian of his person and estate".

On September 27, 1862, the state legislature passed an act entitled: "An act to provide for the safekeeping, care and medical treatment of all insane and idiotic persons in the state." Section 1, of the act authorized the governor to enter into a contract with some suitable person for the safekeeping and care of the insane and idiotic. Section 2 empowered the several county courts to appoint guardians "to take care, custody and management of the estates, real and personal, of all insane persons, idiots and all who are incapable of conducting their own affairs and the maintenance of their families and the education of their children". Section 3 of said act reads, in part, as follows:

"The county judge of any county in this state shall, upon application of any citizen in writing, setting forth that any person or persons, by reason of insanity or idiocy, as the case may be, is suffering from neglect, exposure or otherwise, or is unsafe to be at large, or is suffering under mental derangement, shall cause said person or persons to be brought before him, at such time and place as he may direct, and the said county judge shall also cause to appear, at the same time and place, one or more competent physicians,who shall proceed to examine the person alleged to be insane or idiotic; and if said physician or physicians, after careful examination, shall certify upon oath that the said

person or persons are insane or idiotic as the case may be, then such judge shall cause the said insane or idiotic person to be conveyed to, and placed in charge of, the parties contracting to keep such persons: *Provided,* An appeal shall lie from the county court in the same manner as is provided for appeals from county courts in other cases: *Provided, further,* That no insane or idiotic person shall be sent to an insane asylum, under the provisions of this act who has friends that can, or desire to, provide for their safe keeping and medical treatment.   *   *   *'' (Oregon Code 1930, § 67-1606.)

The foregoing section 3 has been amended many times, but the amendments are not material to the question at issue. At the time the state built its own asylum for the insane, the provision regarding contracting with suitable persons, was done away with and thereafter insane persons were committed to the Oregon asylum for the insane. Section 2 has remained on the statute books without amendment to the present time. (Oregon Code 1930, § 11-1310.)

In the year 1881, the cause of *Sprigg v. Stump,* 8 Fed. 207 (7 Sawy. 280), was heard in the United States Circuit Court of Appeals of the Ninth Circuit. The facts of that case, so far as material to the instant case, were, that on February 3, 1863, an unverified petition was filed in the county court of Polk county charging a man named Fulton with being insane. Based on that petition, the court made an order and issued a warrant for his arrest. Fulton was brought before the court on March 3, 1863, and a hearing was had, and on March 4th an order was made, and entered in the proceedings of the county court sitting for the transaction of county business, committing him to the asylum for the insane. On March 7, 1863, David W. Allingham filed a petition in the same court, praying

that he be appointed guardian for the said Fulton and, on the same day, an order was made appointing him such guardian. The court acting upon the theory that as Fulton already had a hearing and having been adjudged insane, there was no necessity for another hearing on the matter. The points raised in the case were, (1) That the petition charging Fulton with insanity not having been sworn to, the county court had no authority to issue the warrant of arrest; (2) That because the order committing Fulton to the asylum was not entered in the probate record, it was void.

We are not concerned with the disposition of these two points, but in their presentation the fact that there was no notice or hearing upon the appointment of the guardian must have forcibly presented itself to the court.

"This application was made under sections 9 and 10 of the act of 1852, *supra,* and might have been made and heard without reference to the previous action of the court under the asylum act of 1862, in which case the question of Fulton's insanity would have been tried and determined by the county judge as an ordinary question of fact. But the application was made upon the assumption that the matter of Fulton's insanity was *res judicata,* and the order appointing the guardian so recites. But no particular objection is made to this order upon the ground that in making it the question of insanity was not considered an open and original one. The claim of the plaintiff is that all the proceedings as to the custody and sanity of Fulton and the management and disposition of his estate depend for their validity upon the legality of the order of February 3, 1863, directing Fulton to be brought before it upon the charge of insanity and his arrest thereon. But as we have seen, the order was probably well made although upon information not under oath, and if this were otherwise, the legality of the subsequent inquisition and adjudication of insanity is not affected thereby.

"Assuming, then, as we do, that Fulton was lawfully adjudged insane, and that such adjudication authorized the appointment of a guardian without any further inquiry or finding on the subject, the only remaining question in this case is, was the sale of the premises by the guardian legal? and the answer depends upon the sufficiency of the petition of the guardian for the order of sale." Sprigg v. Stump, *supra.*

If this were a matter of first impression, our conclusion as to the necessity of notice before a guardian for the estate of a prior adjudged insane person should be appointed might be different, but the case of *Sprigg v. Stump,* supra, was determined in 1881 and has generally been acted upon by the profession and has not been criticised in over a half of a century; if it should be changed, it is a matter for legislative action rather than a change by judicial decision. The law having grown up somewhat piecemeal, it doubtless has been an oversight on the part of the legislature that it has not been amended so as to require notice to be given to an insane person every time his property rights are about to be affected by the action of the court.

■■ Assuming, therefore, that Effa L. Marsters was legally appointed as guardian of the estate of Edward Raymond Marsters, the next question that presents itself is: Did the county court have jurisdiction to change the beneficiary in the insurance policy on the petition of the guardian without notice to the ward and without a hearing?

In the brief and argument of counsel for respondent, stress is laid on the fact that the change was made on request of the ward during a lucid interval. The frailty of that argument is that there is nothing in the record before us showing that state of facts. The order

making the change recites that the guardian states that she conferred with the ward and he "in her estimation converses and talks very intelligently, and that it is his desire and wish that the beneficiary in said policy of insurance be changed to his mother, the petitioner herein". The record does not disclose that said order had anything to support it except the petition and the statement of the petitioner. The ward had a property interest in the policy at least to the extent of the cash surrender value at that time which was more than $900. It is admitted that the county court has jurisdiction in this class of cases. This, however, is a potential jurisdiction and in order that it be legally exercised the court must obtain jurisdiction of the person or thing on which it acts, by a proper petition and upon due notice. The court had no jurisdiction to deprive the ward of this property or to transfer it without notice or hearing. In our judgment it is such a transfer as is contemplated and provided for by Oregon Code 1930, § 11-1321, which reads as follows:

"The county courts in the respective counties, on the application of a guardian or of any person interested in the estate of any ward, after notice to all other persons interested, may authorize or require the guardian to sell and transfer any stock in the public funds, or in any bank, insurance company, or other corporation, or any other personal estate or effects held by him as guardian, and invest the proceeds of such sale, and also all other moneys in his hands, in real estate, or in any other manner that shall be most for the interest of all concerned therein; and such court may make such further order and give such directions as the case may require for managing, investing, and disposing of the estate and effects in the hands of the guardian."

The order having been made without jurisdiction was void and subject to attack in any proceeding.

■ By changing the name of the beneficiary in the insurance policy, to herself, the guardian was making a gain at the expense of her ward's estate. It should need no citation of authority to uphold the principle of law that a guardian of an insane person's estate should not be permitted to profit over and above his just compensation, at the expense of the estate. The guardian occupies much the same position in regard to his ward's estate as an executor does toward the estate of his testator. 12 R. C. L. 1169, § 61; *Wells v. Wood,* 125 Or. 38 (263 P. 54).

The question of the change of beneficiary having been made by the ward, during a lucid interval and at a time when he fully comprehended the nature and consequences of his act, is not presented by the pleadings or the record before us.

The judgment of the circuit court will be reversed and the cause remanded with instructions to overrule the demurrer and to permit Effa L. Marsters a reasonable time to answer over if she should apply to that court to do so. It is so ordered.

---

Petition for rehearing denied January 30, 1934

ON PETITION FOR REHEARING

(28 P. (2d) 878)

CAMPBELL, J.   Respondent has filed a very earnest petition for rehearing which calls the court's attention to what counsel deems its erroneous rulings in having held that one of the questions involved was the jurisdiction of the Douglas County court to appoint a guardian for the ward without notice to the ward.

■ This cause came before this court on a demurrer to an answer and cross-complaint in which it was alleged that the guardian was appointed without notice

to the ward. Counsel now contends that the allegation does not state the true facts. Possibly that is so, but that is a matter to take advantage of by answer.

■ Counsel next complains that this court held that the jurisdiction of the Marion County court was not called in question. Again we say the answer and cross-complaint alleged the death of the ward and that "defendant, Ladd & Bush Trust Company was duly appointed administrator of the estate by the Marion County court". That allegation is admitted by demurrer. An answer or reply may show that the Marion County court had no jurisdiction over the matter, but we cannot anticipate.

Counsel next complains that the court stated that the brief of respondent laid stress on the statement that the change in the beneficiary was made at the request of the ward during a lucid interval. Whether it was stressed or not, that was one of the reasons given for making the change. In the order making the change of the beneficiary, the county court recited that the petitioner conferred with the ward and that in her (the petitioner's) opinion "he converses and talks very intelligently and that it is his desire and wish that the beneficiary in said policy be changed to his mother, the petitioner". The intended beneficiary would naturally think that such conversation on the part of the ward showed that he talked "very intelligently".

Counsel next complains of our holding that such change in the beneficiary was a transfer of the ward's estate.

■ The insurance policy in question was one in which the insured retained complete control over who should be the beneficiary. Without consulting the named beneficiary, he could make a change to any one else or could surrender the policy and receive its cash value

or he could make it payable to his estate. This was a property right that, so long as he was competent mentally, he could control. While he lived, it was part of his estate and in our judgment, the county court would have no more authority to authorize a transfer from one beneficiary to another than it would have to authorize the guardian to make a last will and testament for the ward.

Counsel next complains that the court failed to consider or pass upon what he designates as Points 8 and 9 of his original brief.

■ No one disputes the proposition of law laid down in Point 8, and as to Point 9 that, in determining the sufficiency of the amended cross-complaint, matters arising after the commencement of the cross-suit, set out in the amended complaint, cannot be considered. With that proposition of law we cannot agree as being applicable in this state to this kind of a suit. Until the issues are finally made up, defendant has a right to set up in his answer or cross-complaint anything occurring up to that time that would constitute a defense or cross-bill.

We are still of the opinion that our decision is right and that it is a good and wholesome rule to follow: that guardians of those who are insane or mentally incompetent should not benefit financially by reason of the guardianship beyond just compensations for services actually rendered and that no property rights of the ward should be transferred except in strict compliance with the statute.

The petition for rehearing is denied.