Argued March 19; reversed April 8, 1941

## OREGON MUTUAL LIFE INSURANCE CO. *v.* JAMES ET AL.

(111 P. (2d) 1026)

Before KELLY, Chief Justice, and BELT, BAILEY, RAND and ROSSMAN, Associate Justices.

*John A. Beckwith*, of Portland, for appellant.

*James L. Conley*, of Portland, for respondent Portland Trust and Savings Bank, administrator.

No appearance for respondent Oregon Mutual Life Insurance Company.

BAILEY, J.  Oregon Mutual Life Insurance Company on April 15, 1927, issued to Joseph Henry Fahey a fifteen-year endowment policy in the sum of $3,500, payable to him April 8, 1942, or to his wife, Maude E. Fahey, upon his death prior to that date.

The policy provided that, "It is understood and agreed that the insured may obtain every benefit, exercise every right, and enjoy every privilege conferred upon said insured by this policy without the consent of any beneficiary." One of the rights reserved to the insured was that of changing the beneficiary. He was granted the further right of surrendering the policy at any time after the end of the third year, if all premiums were duly paid, for (1) cash value, (2) participating paid-up insurance, or (3) participating extended term insurance. In the event that any subsequent premium should not be paid by the insured after payment of three years' premiums in full, the insured

was granted the right, upon written request within the month of grace provided and surrender of the policy, to exercise one of the three options above enumerated. If request was not so made and the policy surrendered by the insured, the policy was not to lapse or become void, "provided that the then loan value hereon shall exceed the amount of any premium then unpaid and of any indebtedness of the insured to the company. In such event the company will, without request, charge the amount of such premium, with interest in advance to date next premium is due, at a rate not exceeding six per centum per annum, as a loan against the policy, thereby continuing said policy in force, subject to such indebtedness". This procedure was to apply to successive unpaid premiums within the loan value of the policy.

The policy also provided that after the payment of three full years' premiums, at any time while the policy was in force the company would loan, on a proper assignment of the policy and at a rate of interest not exceeding six per cent, a sum equal to or at the option of the owner, less than the entire reserve thereon at the end of the then current policy year.

On November 30, 1928, Mr. Fahey was adjudged insane by the circuit court for Multnomah county, department of probate, and his wife was appointed guardian of his estate. Prior to that date Mr. Fahey had been committed to the veterans' hospital at American Lake, Washington, and he remained there until his death, April 25, 1939. Up to the time that he was placed in the hospital, Mr. Fahey had been employed in the fire department of the city of Portland, at a monthly salary of $168. In January, 1929, he was awarded by that department a pension of $90.68 per

month, which was paid to his guardian until his death.

The wife of the insured, according to her testimony, paid some of the premiums on the policy during the years 1927 and 1928, although she did not state definitely the amount of such payment. The other premiums on the policy, with the exception of what might have been paid by the insured, were paid by the guardian out of Mr. Fahey's pension. For the first seven or eight years after the insured had been adjudged insane his wife received no part of his pension and supported herself. During the last two years and seven months of her service as guardian she received from the guardianship estate fifty dollars per month, whether for her support or as payment for her services the record does not show.

In July, 1938, Mrs. Fahey resigned as guardian of her husband's estate, and thereafter the defendant Portland Trust and Savings Bank was duly appointed and qualified as guardian of Mr. Fahey's estate. Mrs. Fahey in August, 1938, obtained a divorce from Mr. Fahey, and prior to the institution of this proceeding married a Mr. James.

Late in January, 1939, or early in February of that year the attorney for Joseph Fahey's mother called upon the Portland Trust and Savings Bank's assistant trust officer, who had charge of the guardianship of Mr. Fahey's estate, and pointed out to him the possible liability of the bank as guardian if it failed to "make some effort to have the beneficiary changed or in some way get the benefit" of the insurance policy above described. The attorney, Mr. Conley, suggested to the trust officer as a duty taking steps to procure the cash surrender value of the policy. As the guardian bank's

officers did not know the proper procedure to follow, the trust officer advised Mr. Conley that since he was representing the ''ultimate heir of this ward'' it was agreeable to the guardian that he ''act as attorney for the guardianship upon this matter of the life insurance policy''. Mr. Conley, after taking up the matter with counsel for the guardian bank, was authorized to proceed to handle the matter of the insurance policy as he might deem proper.

Early in February, 1939, Mr. Conley telephoned to a Mr. Brown, of the insurance company, and stated to him that he wanted to change the beneficiary in the policy herein mentioned, and Mr. Brown said that the change could not be made because of the condition of the insured. Mr. Conley then stated that he ''wanted to cash the policy'' and was told by Mr. Brown that he would have to take up that matter with the insurance company's attorneys.

The request for the cash surrender value of the policy was disallowed by the insurance company. The policy was not delivered to the company, and the only ground for denying the request was that according to the advice of the insurance company's attorneys the guardian could not surrender the policy. At the time this application was made by Mr. Conley to the insurance company, the insured was ''wholly insane and incompetent'' and *in extremis.*

The guardian on April 8, 1939, filed in the guardianship proceeding a petition requesting an order of the court authorizing and directing the guardian to surrender the contract of insurance and demand of the insurance company the cash value of the policy. The petition, after setting forth the issuance of the policy of insurance to Joseph Fahey, the provision as to

change of beneficiary and the agreement as to cash surrender value, alleged that the funds and property of the guardianship estate were "small and would not be adequate to meet any unusual or extraordinary expense for" the ward's care, and that the mother of the incompetent was without funds for her own support. It further alleged that the beneficiary originally named in the contract of insurance had obtained a divorce from the insured. The petition then alleged that the condition of the ward's health was such that he was "not expected to live beyond a few days or weeks", and the guardian did not feel justified in using the small funds of the guardianship estate for the purpose of paying premiums on the policy and believed that it was for the best interest of the ward's estate that the contract of insurance be surrendered for its cash value.

Based upon the petition, an order was entered directing that the beneficiary named in the policy appear at a time fixed, to show cause why the petition should not be allowed. The beneficiary thereupon appeared and filed a demurrer to the petition.

Prior to the decision on this petition the insured died. A further petition was thereupon filed by the guardian, setting forth the fact of the ward's death and alleging that for the protection of the guardianship estate it was necessary that a decision be rendered upon the previous petition and that the decree when rendered be entered *nunc pro tunc* as of a date prior to the ward's death.

Thereafter the court made an order sustaining the demurrer to the first petition and denying the second petition. The reason for sustaining the demurrer, as stated by the court in its opinion, was "that the petitioner has no valid right to surrender the life

insurance policy under the conditions set forth in the hearing presented. The ward, who is now dead, was in a government hospital—and of course at no expense, either to himself or his estate—and it can not be said that by surrendering the policy the interests of the ward or his estate would be benefited thereby.''

Upon the death of the insured the beneficiary named in the policy submitted to the insurance company proof of death, in accordance with the terms of the policy except that she did not deliver to the company the policy of insurance. Portland Trust and Savings Bank was appointed administrator of the estate of Joseph Henry Fahey, deceased, and made demand upon the insurance company for the cash surrender value of the policy as of the date of the demand made by the guardian.

Oregon Mutual Life Insurance Company thereupon instituted this suit, naming as defendants Maude E. Fahey James and Portland Trust and Savings Bank, administrator of the estate of Joseph Henry Fahey, deceased. It set forth in its complaint that it was unable to determine to whom payment of the proceeds of the insurance policy should be made, and tendered into court the sum of $2,954.14, representing the face of the policy less loans and balance of annual premium due. The prayer of the complaint was that the defendants be required to interplead and litigate between themselves their respective claims to the proceeds of the policy.

Both defendants answered, and upon final determination of the suit a decree was entered awarding to the plaintiff fifty dollars as attorneys' fees, and its costs, to the administrator the sum of $2,232.34 as the cash surrender value of the policy less the deductions

above mentioned, and to Maude E. Fahey James the balance of the money paid into court by the plaintiff. From this decree the defendant Maude E. Fahey has appealed.

The question here for determination is whether the guardian of an insane person can, without authority of a court, either probate or equity, by demanding the cash surrender value of an insurance policy such as the one here involved, cut off the rights of the beneficiary therein named and obtain payment of the cash surrender value for the ward's estate.

■■ The probate courts of this state are granted exclusive jurisdiction in the first instance to take care and custody of the estate of an insane person, to appoint and remove guardians therefor and to direct and control the conduct of such guardians: §§ 13-501 and 22-109 O. C. L. A. Guardians of insane and incompetent persons are required to pay all just debts due from the ward, if his estate is sufficient for that purpose, to settle all accounts of the ward and to demand, sue for and receive all debts due the ward, or, with the approval of the probate court, "compound for the same": § 22-122 O. C. L. A. The guardian is also granted authority, upon receiving approval of the probate court, to sell and transfer the personal estate of the ward and invest the proceeds: § 22-201 O. C. L. A.

■ Joseph Henry Fahey, the insured, to whom the policy granted certain options, was incompetent, while insane, to surrender or assent to the surrender of the policy for its cash value: *Folts v. Jones,* 175 Tenn. 77, 132 S. W. (2d) 205; *First Texas Prudential Insurance Co. v. Ryan,* 125 Tex. 377, 82 S. W. (2d) 635; *Nutter v. Des Moines Life Insurance Company,* 156 Iowa 539, 136 N. W. 891; 6 Couch on Insurance, § 1422, page 5060.

The insured had not, prior to the time he was adjudged insane, made any election to surrender the policy for its cash value. In fact, at the time of his interdiction the right to exercise that option had not accrued to him. In order to create the relationship of debtor and creditor between the insurer and the insured it was essential that a valid election be made by the insured or on his behalf to receive the cash surrender value of the policy. There was not, at the time Mrs. Fahey was appointed guardian, or later, when the bank was substituted as guardian, any debt due from the insurance company to the insured: *Farmers & Merchants Bank v. National Life Insurance Company,* 161 Ga. 793, 131 S. E. 902, 44 A. L. R. 1184 and annotation.

██ The guardian bank sought to bring about the relationship of debtor and creditor between the insurance company and the insured by demanding the cash surrender value of the policy. This act of the guardian was an attempt to make an election on behalf of the insured. Such an election or choice is not a merely ministerial act but involves judgment and discretion. It is a judicial determination: *Folts v. Jones,* supra, *Pendas v. Equitable Life Assurance Society,* 129 Fla. 253, 176 So. 104, 112 A. L. R. 1051; *McCartney v. Jacobs,* 288 Ill. 568, 123 N. E. 557, 4 A. L. R. 1120; *In re Reeves,* 10 Del. Ch. 324, 92 A. 246; *Nutter v. Des Moines Life Insurance Company,* supra, 32 C. J. 695, § 391. See also *Brooklyn Trust Co. v. Dais,* 122 N. J. Eq. 182, 192 A. 849. "A choice is involved. A right to elect for a lunatic does not flow from a mere power to manage his property, for that implies a title to the thing to be managed; nor does it flow from the right to sue for and recover property of the lunatic": *In re Reeves,* supra.

In *Folts v. Jones,* supra, the guardian of Nannie J. Paul, a person of unsound mind, brought a suit in equity for a decree advising and directing him with reference to a policy of insurance on the life of his ward. It appears from the statement of facts that Nannie J. Paul in 1922 procured from an insurance company a twenty-year-payment policy of insurance on her own life, in which her grandniece was named as beneficiary. The policy reserved to the insured the right to change the beneficiary, and further granted to her the right of surrendering the policy for its cash value. In 1938 the insured was adjudged of unsound mind. The guardian in his petition asked the court to advise him concerning the proposed surrender or as to the payment of future premiums on the policy.

The supreme court of Tennessee, after pointing out that the insane person was incapable of exercising the right of election and that any election made on her behalf should be made by the court, stated:

"While it is true that the beneficiary, Kathleen Jones, a grandniece of the insured, has no vested interest in the insurance prior to the death of the insured, the right to change the beneficiary being reserved in the policy, Life Association v. Winn, 96 Tenn. 224, 33 S. W. 1045; Lunsford v. Nashville Sav. Corp., 162 Tenn. 179, 35 S. W. (2d) 395, nevertheless, the court will not elect to order a surrender of the policy for its cash value and thereby destroy the beneficiary's contingent interest, save and unless it be plainly shown to be for the manifest interest of the insane insured. While it can not be said that the beneficiary has the legal right of succession to the benefits of the policy, during the lifetime of the insured, yet, the insured while sane, named Kathleen Jones as the person she desired the proceeds of the policy to be paid. While, as above stated, the beneficiary is without legal right to succession during

the lifetime of the insured the rule against alteration in succession by a court can be said to find application in a general way to a situation presented in the instant case.''

See also, in this connection, *Pendas v. Equitable Life Assurance Society*, supra.

The respondent administrator cites and relies upon *Maclay v. Equitable Life Assurance Society*, 152 U. S. 499, 38 L. E. 528, 14 S. Ct. 678, as a precedent to uphold its demand for the cash surrender value of the policy here involved. In that case a policy of insurance was issued on the life of Samuel H. Snowden, payable to his wife upon his death or to their children if she should not survive him. The wife of the insured predeceased him, and he was appointed guardian of their only child, a minor.

Three years later the policy had a matured surrender value in excess of $3,000 and the guardian of the minor, without an order of the chancery court authorizing him so to do, applied to the insurance company and received the full surrender value of the policy. Two years thereafter the insured died and the plaintiff in the case was appointed tutor of the minor child. He then brought an action against the insurance company for the full amount of the policy.

The question involved in that case, as stated by the court, was whether the receipt of the surrender value of the policy by the guardian was a discharge of the policy. It was held that the insurance company was absolved from any further liability on the policy, that the guardian was authorized to collect for the benefit of his ward any amount due under the policy, and that he had the right either to keep the policy in force

by paying the premiums or to surrender it for its cash value.

In the Maclay case, no one but the ward had any interest in the benefits of the insurance policy. It was there held that the guardian, who was also the insured, had a right to take the cash surrender value or to continue paying the premiums so that the ward might, upon the death of the insured, collect the full amount of the policy. In the case at bar, however, the guardian attempted to make a new contract between the insured and the insurance company and to prevent the named beneficiary from receiving the benefits of the contract made by the insured before he became insane.

It has been held that neither a guardian nor a court may change the beneficiary named in an insurance policy after the insured has become incompetent: *California Life Insurance Company v. Marsters,* 145 Or. 640, 28 P. (2d) 233, 878; *Kay v. Erickson,* 209 Wis. 147, 244 N. W. 625, 84 A. L. R. 361; *In re Wainman's Estate,* 200 N. Y. S. 893. To the contrary, see *In re Degnan,* 122 N. J. Eq. 470, 194 A. 789, wherein it was held that on a proper showing the chancellor has the power to authorize the change of a beneficiary from an individual to the estate of a ward.

In the instant case the ward was being cared for at the veterans' hospital at American Lake, without cost to his estate. In addition, there was being paid to his guardian for his use a pension in excess of ninety dollars a month. The purpose of surrendering the policy and obtaining its cash value was, apparently, to procure the money for the mother of the insured and to prevent his former wife from receiving any benefit under the policy. This was an attempt to do indirectly

what this court has held may not be done directly, that is, to change the beneficiary in a life insurance policy under circumstances such as here shown.

The beneficiary named in the policy was the wife of the insured. At the time he was adjudged insane she had been married to him five years, and not until ten years after his commitment as insane did she procure a divorce from him. She received no part of his pension money toward her support for more than seven years of his incompetency. Part of the pension money that might have been applied to her needs was used for the payment of insurance premiums and to buy clothing and other necessities for the ward. During the time he was confined in the hospital his wife visited him frequently.

It is our conclusion that the guardian had no authority, without first obtaining an order of court therefor, to exercise the option granted in the insurance policy to the insured to surrender the policy and demand its cash value. Upon the death of the insured, therefore, Maude E. Fahey James became entitled to the proceeds of the policy of insurance paid into court by the insurance company, less the amount decreed to the plaintiff for its attorneys' fees and costs.

The decree appealed from is reversed and the cause is remanded to the circuit court with direction to enter a decree in conformance with this opinion. Neither party will recover costs in this court.