Argued and submitted May 12, affirmed in part;
reversed in part and remanded July 14,
reconsideration denied August 21,
petition for review denied November 10, 1980 (290 Or 149)

# STRAIN,
*Appellant,*

*v.*

# ROSSMAN, et al,
*Respondents,*

## (No. A7710-14357, CA 14585)

614 P2d 102

Mervin W. Brink, Hillsboro, and Roy Miller, Hills-boro, argued the cause for appellant. Mervin W. Brink filed the briefs for appellant. With him on the briefs were Roy Miller, Hillsboro, and Brink, Moore, Brink & Peterson, Hillsboro.

H. Kenneth Zenger, Hillsboro, argued the cause and filed the brief for respondents. With him on the brief was Huffman and Zenger, Hillsboro.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

The plaintiff filed this suit for a declaratory judgment wherein she sought the adjudication of the rights of the parties to certain bank accounts. During trial the appearing defendants[1] amended their answer and sought an additional adjudication of the parties' rights in the proceeds from two separate sales of United States Series "E" savings bonds. The plaintiff has appealed from a decree holding that the bank accounts and the proceeds from the sale of the 1977 Series "E" savings bonds were assets of the conservatorship estate and that the plaintiff had no rights in those assets.[2] We affirm in part and reverse in part and remand.

At the time of the trial of this case George Frank was 87 years of age. He is of German descent and has never learned to read or write the English language. He conversed with his family in part English and part German. During his adult life he operated a garbage collection business and accumulated assets worth at least $200,000.

The defendants Arthur Rossman, Emma Ruff, and Lydia Campbell are George Frank's stepchildren by his late wife's previous marriage. The defendant Herbert Frank and the plaintiff, Helen Strain, are brother and sister and the natural children of George Frank.[3]

---

[1] A default was entered against all of the financial institutions and municipalities named as defendants.

[2] The first purchase of Series "E" bonds was in January 1976, in the joint names of George Frank and Helen Strain with a maturity value of $20,000.

The second purchase of Series "E" bonds was in January 1977 in the same joint names with a maturity value of $20,500.

The trial court's decree provided "the plaintiff is the sole and absolute owner of, and George Frank has no interest whatsoever in" the bonds purchased in 1976. The defendants have not cross-appealed.

[3] Arthur Rossman, Emma Ruff and Lydia Campbell are half brother and half sisters to Herbert Frank and Helen Strain. They all had the same mother.

Between 1969 and 1976 the plaintiff, at the request of George Frank, signed jointly with him several cards for bank accounts. These accounts are referred to by the parties as "joint accounts with rights of survivorship."[4] The plaintiff did not contribute any money to these accounts. According to the plaintiff she was to use the money in the accounts for the care of her father, George Frank, and if there was any remainder upon his death, it was to be her sole property.

In January 1977, George Frank suffered a disabling stoke which severely curtailed his ability to speak. He was in and out of hospitals. The plaintiff took him home with her to Hermiston to live. Friction developed between the plaintiff and the individual defendants. On March 12, 1977, the defendants Herbert Frank and Arthur Rossman removed George Frank from the hospital in Hermiston and returned him to Portland. On March 14, 1977, a petition was filed in Washington County for the appointment of a guardian of the person and conservator of the estate of George Frank. In the latter part of March 1977, the plaintiff, on the advice of counsel, transferred some of the joint accounts into her individual name to protect "her inheritance."[5] She testified that she has not spent any of the funds and that they remain intact.

On May 20, 1977, an order was entered appointing Herbert Frank guardian of the person of George Frank and Arthur Rossman conservator of the estate of George Frank.[6]

---

[4] The exact language varies from account to account. The parties make no issue of this. The language in the savings and loan accounts is identical to that quoted in the account set out in *Williams v. Mallory,* 284 Or 397, 399, 587 P2d 85 (1978).

[5] The lawyer who gave this advice does not represent the plaintiff on this appeal.

[6] The order appointing the guardian and conservator refers to George Frank as "an Incompetent." Both parties throughout their briefs in this court use the same term. We assume that the parties intend by this term to refer to an "incapacitated person." ORS 126.003(4).

[60]

After the trial of the suit for a declaration of the parties' rights the court entered a decree that George Frank was the "sole and absolute owner" of the Series "E" savings bonds issued in January 1977 and all the joint bank accounts in question.[7]

■    The plaintiff contends that the trial court erred in declaring:

(1)  "that Plaintiff did not have a right of survivorship in the joint bank accounts established by Plaintiff's father before his incompetency" and

(2)  "that the conservatorship estate of George Frank was entitled to sole ownership of the proceeds from the sale of the second purchase of United States Series 'E' bonds."

It is clear that prior to his incapacity George Frank as the depositor of all the funds in the joint bank accounts could have terminated the accounts without any liability to the plaintiff. If the plaintiff had withdrawn the funds during the life of George Frank she would have held them as trustee for him. *Greenwood v. Beeson,* 253 Or 318, 454 P2d 633 (1969).

The question here is: What effect does the incapacity of George Frank have on the status and ownership of the joint bank accounts?

We have been unable to find any Oregon authority on this question. The rule from other jurisdictions is that when the donor depositor of a joint account becomes incompetent, his guardian or conservator does not have full discretionary rights to the account. The guardian or conservator may only use the joint account funds for the essential care, support and maintenance of the ward. *Howard v. Imes,* 265 Ala 298, 90 So2d 818 (1956); *Coolidge v. Brown,* 286 Mass 504, 190 NE 723 (1934); *First Federal Sav. & L. Ass'n of Detroit v. Savallisch,* 364 Mich 168, 110 NW2d 724 (1961); *Miller v. Yocum,* 21 Ohio St2d 162, 256 NE2d

---

[7] There were six different bank accounts. There was testimony that the bank accounts and savings bonds totaled approximately $173,000.

208 (1970); *Boehmer v. Boehmer,* 264 Wis 15, 58 NW2d 411 (1953).[8]

In the case of *In re Guardianship of Williams,* 313 So2d 411 (Fla App 1975), the bank accounts were in the names of Edith K. Williams and Bell D. Stokes "payable to either or the Survivor." Both Williams and Stokes had been declared incompetent. Separate guardians had been appointed. There was no evidence as to the origin of the funds. The trial court ordered the accounts terminated and the funds divided equally between the guardianships. The Court of Appeals reversed, citing *Howard v. Imes, supra,* holding that a guardian has "no title to the property of the ward" and "that his authority to use the proceeds of a joint account is limited by the necessity of the ward."

■■ The donor's right to terminate the joint account and withdraw the funds is a personal right that cannot be transferred to a guardian. *Howard v. Imes, supra.* A joint survivorship account is not terminated as a matter of law upon the appointment of a guardian. *Miller v. Yocum, supra.*

■ We are of the opinion that the trial court could not terminate or authorize the guardian or conservator to terminate the joint bank accounts. The Oregon Supreme Court has recognized certain personal rights of incompetent people which cannot be exercised by the courts or the guardian. In *Oregon Mut. Life*

---

[8] *See also* 10 AmJur2d Banks § 371 at 334 (1963); Kepner, The Joint and Survivorship Bank Account—A Concept Without a Name, 41 Cal L Rev 596 (1953); Annotation 62 ALR2d 1091 (1958).

[9] ORS 126.347 provides:

"In investing the estate, selecting assets of the estate for distribution under ORS 126.317 to 126.327, and utilizing powers of revocation or withdrawal available for the support of the protected person and exercisable by the conservator or the court, the conservator and the court shall take into account any known estate plan of the protected person, including his will, any revocable trust of which he is settlor, and any contract, transfer or joint ownership arrangement with provisions for payment or transfer of benefits or interests at his death to another or others which he may have originated. The conservator may examine the will of the protected person."

*Ins. Co. v. James,* 166 Or 336, 111 P2d 1026 (1941), the guardian was denied the right to surrender the ward's life insurance policy for cash. In *California Life Ins. Co. v. Marsters,* 145 Or 640, 28 P2d 233, 28 P2d 878 (1934), it was held that the probate court could not change the ward's beneficiary on a life insurance policy. Under ORS 126.347 the conservator is required to "take into account" any "joint ownership arrangement"[9] previously made by the protected person.

■     The plaintiff recognizes that it would be premature for this court to hold that she has a vested survivorship right in the joint bank accounts. Her reply brief in this court says:

> "Plaintiff has consistently argued for only one thing—recognition of a contingent right of survivorship in herself."

In a declaratory judgment suit the court will not rule upon a contingent right:

> "A court will not make a declaration 'in a suit wherein the rights of the plaintiff are contingent upon the happening of some event which cannot be forecast and which may never take place * * *.' [*Hale v. Fireman's Fund Ins. Co.*], 209 Or at 103-04." *Bell v. City of Corvallis,* 25 Or App 821, 826, 551 P2d 125 *rev den* (1976).

We reverse all those provisions of the trial court's decree as to the six enumnerated bank accounts.[10]

---

[10] Account #115-964, Hermiston branch, U. S. National Bank of Oregon

Account #3601-133, Tigard branch, Washington Federal Savings & Loan Association

Account #5-553-1, Hollywood branch, U. S. National Bank of Oregon

Account #26-001576-1, Hermiston branch, Benjamin Franklin Savings & Loan Association

Account #585-0000451, Umatilla branch, First National Bank of Oregon

Account #58-30800, Beaverton branch, Western Savings & Loan Association

We direct the plaintiff to deliver to the clerk of the trial court for delivery to the conservator of the estate of George Frank all securities, passbooks, and certificates representing the ownership of all the principal, interest and dividends of the six enumerated bank accounts. The conservator shall hold said funds subject to the following conditions:

(1)  All accounts shall be in the name of George Frank and Helen Strain as joint tenants with rights of survivorship.

(2)  None of said funds shall be used except for the necessary care, maintenance and support of George Frank.

It is our intention that any bank accounts which have been transferred from the joint names of George Frank and the plaintiff shall be returned as nearly as possible to their former status.

We are not ruling on the question of whether or not the plaintiff has a contingent right of survivorship in the funds represented by the joint bank accounts. We are merely holding that nobody except George Frank can change the ownership of those accounts during his lifetime, and he has been declared to be incapacitated.

■    The trial court did not give any reason for ruling that the proceeds from the sale of the 1977 United States Series "E" bonds were the sole property of George Frank. In May 1976 George Frank loaned the plaintiff the sum of $15,000 to purchase some real estate. The plaintiff testified that in February 1977 she and George Frank went to an attorney's office where she repaid the loan by delivering a check to the attorney. The check was passed to George Frank, who indicated that he wanted to go to the bank to buy the bonds. The bank issued the bonds in the names of George Frank and Helen Strain, or survivor. After the conservatorship hearing the plaintiff cashed these bonds. She testified that she has kept the funds intact.

George Frank suffered the stroke in January 1977. These bonds were purchased the next month. Under our de novo review, we find George Frank did not have the necessary mental capacity to make an intelligent election as to the ownership registration of the bonds. We are not holding that there was any fraud or overreaching—none was pled. We hold only that George Frank did not have the required mental capacity to contract. We affirm the trial court's decree as to the 1977 Series "E" United States savings bonds.

Affirmed in part; reversed in part and remanded.