FOLTS *et al. v.* JONES *et al.*

(*Knoxville,* September Term, 1939.)

Opinion filed October 21, 1939.

THOMAS, FOLTS & BROWN, of Chattanooga, for complainant.

FRANCIS ESSLINGER, of Huntsville, Ala., for defendant Kathleen Jones.

MILLER, MILLER & MARTIN, of Chattanooga, for defendant Mutual Life Ins. Co. of New York.

CLARENCE KOLWYCK, of Chattanooga, guardian *ad litem* for defendant Nannie J. Paul.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

Complainant, Aubrey F. Folts, as guardian of Nannie J. Paul, alleged in his bill herein that his ward is a person of unsound mind, having been so adjudged on February 5, 1938, and committed to Central State Hospital, at Nashville, Tennessee; that among the assets of his ward coming into his hands as guardian is a life insurance policy for the face amount of $5,000, issued to Nannie J. Paul by the Mutual Life Insurance Company of New York on March 6, 1922, which policy is on the twenty-year payment life plan; that the annual premium on said policy is $257.20, which have been kept paid in order to keep the policy in force pending a final determination of the guardian's rights and duties in respect to said policy.

It is further averred that defendant, Kathleen Jones, is named beneficiary in said policy; but that the right is reserved to the insured, under the terms of the policy, of revocation and change of beneficiary. That the guardian believes that since the right of revocation and change

of beneficiary is reserved in the policy, no rights whatever vested in the beneficiary any present interest and that the cash surrender of said policy is that of the insured in her own right; that even if the court should declare he has no right to surrender the policy for cash as a part of his ward's estate, yet he has the right to discontinue payment of premiums and allow the policy to remain in a paid-up status according to the non-forfeiture clause of the policy.

It is further alleged that in all of these insistences the beneficiary, Kathleen Jones, has an adverse interest and is made a party defendant in order that she may have the opportunity to present what claim, if any, she may have in connection with said policy.

The prayer of the bill is, in substance, that the court advise and direct the guardian with reference to the matters set out in the bill.

Defendant, Kathleen Jones, made answer and alleged that to maintain the insurance in force would be more beneficial to the estate of Nannie J. Paul than would be the cash for which the policy could be surrendered; that complainant did not allege facts showing that a conversion of the policy into cash would be of any benefit to her estate; and that Nannie J. Paul having created a succession during her sanity by which Kathleen Jones was to succeed to the value of the insurance policy upon her death, the court should protect and carry out the intentions and desires of the incompetent as shown by her acts prior to her incompetency; that should the court find it was to the best interest of the estate of the incompetent to convert the policy into cash such conversion shall be under the direction of the court, so that the fund so created would, upon the death of the incompetent, prior to the death of Kathleen Jones, be payable to said

defendant as would be the proceeds of the insurance policy if left in force; and that if the court should find it to the best interests of the incompetent's estate to direct the surrender of the policy for either a term insurance policy or a paid-up policy that it should be payable under the same terms as the existing policy. It is further alleged that there was available dividend additions having a cash value of $575, which could be cashed without surrendering the policy, in the event the income from the estate of the incompetent should be insufficient to keep her in comfort and pay the annual premiums upon the policy, it would be more advantageous to her estate and would maintain the succession to the benefits; that she (Kathleen Jones) has an expectant interest in said policy which should be protected and preserved by the court.

The cause was tried upon a written stipulation of facts.

The decree of the chancellor, in its material parts, was as follows:

"1. That the amount of premiums which the Guardian has paid since Insured's commitment in order to keep the policy in force, together with all costs of this cause, including the fee, hereinafter allowed, of the guardian *ad litem,* shall be paid by the guardian out of the cash surrender value of the dividend additions upon said policy.

"2. That the policy involved in this cause shall not be surrendered for cash at this time, but it shall be retained and kept in force in the manner hereinafter decreed.

"3. That after the guardian has repaid to himself, for the benefit of the estate of Nannie J. Paul, the amount of the premium payments which he has paid from her estate since his appointment, and after the costs of this cause have been paid out of the cash surrender value of

the dividend additions, as ordered by Paragraph 1, supra, the balance of the cash surrender value of said dividend additions upon the policy shall be applied by the Guardian to the payment of future premiums as they shall fall due. When the cash surrender value of the dividend additions and those dividends which may be declared upon the policy annually, have been exhausted so that the premiums cannot be paid from that source, then the Guardian shall advance from the estate of Nannie J. Paul such further sums as may be necessary to pay the premiums and keep the policy in force until it shall become a paid up policy under its terms. Such sums as may be advanced from the estate of Nannie J. Paul for the payment of future premiums shall be and remain a prior charge against said policy or proceeds realized therefrom, in favor of the estate of Nannie J. Paul, to the amount of such advancements, together with 6% interest from the date of such payment or payments by the Guardian. Any dividends declared by the insurance company upon the policy after the premiums have been fully paid, shall be collected by the Guardian and credited by him as repayments to the estate of Nannie J. Paul, of the advancements made from her estate in paying the premiums upon the policy. In the event the dividends declared upon the policy shall be insufficient to reimburse the estate of Nannie J. Paul for the amount of the advancements with interest thereon at the time the policy becomes collectible, then the proceeds of the policy shall be first subject to the payment of the balance of such advancements.

''4. That the complainant guardian be, and he hereby is, authorized and instructed to do all acts and to make such applications, complete such forms, sign such lien

instruments or do any other acts as may be necessary to effect the plan as hereinabove outlined and decreed.

"5. That the fee of the Guardian *ad litem,* Clarence Kolwyck, is fixed at $50.00 for services to date.

"6. That this decree is without prejudice to the Guardian in making further application to be allowed to surrender said policy for cash in the event of extraordinary need on the part of the Ward, and is without prejudice to the rights of the Insured Ward under the policy contract, and the cause shall be and remain open for any petitions or orders that may be necessary in this respect."

From this decree all of the parties, except defendant insurance company, have appealed to this court and assigned errors.

The controlling questions presented for determination may be stated as follows: (1) Shall the policy be surrendered for its cash value? (2) If not, how shall the premiums be paid?

■ ■ An insane person is, of course, incapable of exercising a right or power of election, but any election on his behalf should be exercised by the court. 32 C. J., 749. But, to authorize such election it shall clearly appear to be for the best interests of the incompetent. 32 C. J., 695. It appears from the stipulation of facts that the assets of the estate of Nannie J. Paul aggregate approximately $27,680 and consist of U. S. Government bonds and other liquid assets, except approximately $10,-650 in notes due her, most of which are secured by land either in Alabama or Georgia. The guardian's annual settlement for the year ending February 10, 1939, discloses a gross income from the estate, including considerable delinquent interest collected on said notes, of $1,302.20, and that disbursements amounted to $1,202.85,

including several hundred dollars for non-recurring items. The guardian estimates an income from the estate for the current year at about $850, and that the disbursements will be within the income, barring any protracted sickness or other emergency. In the absence of such emergencies, payments of $100 quarterly to the Central State Hospital provide for all the comforts and care of Nannie J. Paul that can be supplied one in her condition. Clothes are not included in this figure. The premiums upon the guardian's bond are $150 annually and further expenses on account of administration costs are to be anticipated.

It appears from the application for the policy that Nannie J. Paul was born September 14, 1877. She is now slightly over 62 years of age. With a sufficient income from her estate to take care of her adequately in the hospital where she is confined, no sufficient reason is shown why the court should exercise the power of election in her behalf to surrender the policy for its present cash value of $3,451.41. Furthermore, the chancellor in his decree expressly reserved to the guardian the right to make further application to be allowed to surrender the policy for cash in the event of extraordinary need on the part of the ward and provided that the cause shall be and remain open for any petitions or orders that may be necessary in this respect.

While it is true that the beneficiary, Kathleen Jones, a grandniece of the insured, has no vested interest in the insurance prior to the death of the insured, the right to change the beneficiary being reserved in the policy, *Life Association* v. *Winn*, 96 Tenn., 224, 33 S. W., 1045; *Lunsford* v. *Nashville Sav. Corp.*, 162 Tenn., 179, 35 S. W. (2d), 395, nevertheless, the court will not elect to order a surrender of the policy for its cash value and

thereby destroy the beneficiary's contingent interest, save and unless it be plainly shown to be for the manifest interest of the insane insured. While it cannot be said that the beneficiary has the legal right of succession to the benefits of the policy, during the lifetime of the insured, yet, the insured while sane, named Kathleen Jones as the person she desired the proceeds of the policy to be paid. While, as above stated, the beneficiary is without legal right to succession during the lifetime of the insured, the rule against alteration in succession by a court can be said to find application in a general way to a situation presented in the instant case. In 32 C. J., 724, the rule is stated as follows:

"Before the character of the interest in property, held by a person of unsound mind, can be changed, it must be made manifest that it is necessary to protect and promote his interest. Although as a rule, the court will preserve, so far as possible, the interests of the succession, this rule yields to the paramount rule which makes the ward's welfare the first consideration without regard to the rights of those who may have eventually rights to succession."

In note 78 to the above, it appears that in *Matter of Colah*, 3 Daly, N. Y., 529, 538, the court quoted the following from the English case of *Ex parte Whitbread*, 35 Reprint 878:

"The Court has nothing to consider but the situation of the lunatic himself, always looking to the probability of his recovery, and never regarding the interest of the next of kin. . . . The Court does nothing wantonly or unnecessarily to alter the lunatic's property, but, on the contrary, takes care of it for his sake, that, if he recover, he shall find his estate as nearly as possible in the same condition as he left it, applying the property

in the mean time, as the Court thinks it would have been wise and prudent in the lunatic himself to apply it, if he had been capable.''

On the second question presented, how the premiums shall be paid, we think the method set forth in the chancellor's decree to be just and equitable and for the best interest of the ward.

Without further elaboration, it is our conclusion that all assignments of error must be overruled and the decree of the chancellor affirmed. The cause will be remanded for such further proceedings as may become necessary. The costs of the cause will be paid by the complainant guardian out of the assets of the estate of the ward.