FREEMAN *et al. v.* MARTIN.

(*Nashville*, December Term, 1943.)

Opinion filed July 1, 1944.

L. H. Walker, of Lebanon, for complainant-appellee.

Guild & Guild, of Nashville, for defendant-appellant.

Mr. Justice Gailor delivered the opinion of the Court.

The bill in this cause was filed in the Chancery Court of Wilson County by Harry Ed Freeman, guardian for his sister, Carrie Freeman Martin, J. E. Freeman, her father, and Mrs. Belle Haralson, guardian for her husband, J. W. Haralson, as complainants, against Carrie Freeman Martin, a person of unsound mind, defendant. The bill was filed on the 18th day of November, 1939, to sell a house and lot located in Lebanon, Tennessee, which had been conveyed to Carrie Freeman Martin by her father, J. E. Freeman. The consideration for said conveyance was natural love and affection, the assumption by the transferee of the mortgage indebtedness due to Mrs. Belle Haralson as guardian, and the provision for the transferor, J. E. Freeman, of a home during the balance of his natural life.

It was alleged in the bill that it was necessary and to the best interest of Carrie Freeman Martin to sell the house and lot in order to satisfy the mortgage note of Mrs. Belle Haralson; to pay City Taxes due the City of Lebanon for six years in the sum of $239.65; taxes due Wilson County and the State of Tennessee for five years in the sum of $231.80; and for the maintenance and support of J. E. Freeman, since such support was a part

of the consideration for the transfer of the house and lot by J. E. Freeman to Carrie Freeman Martin. As guardian of defendant, Harry Ed Freeman further alleged that he had no funds with which to meet these debts, and that Mrs. Belle Haralson had agreed that the house and lot be sold through the Chancery Court on such terms as the Court might order, rather than for cash as provided by her said mortgage, alleging that such sale on deferred payments would bring a better price than would a cash foreclosure sale under the mortgage. Neither the note nor the trust deed was exhibited when the bill was filed, nor are they in the record before us.

The Court appointed a guardian *ad litem* to protect the interests of Mrs. Carrie Freeman Martin, defendant. The cause was referred to the Master who reported the amount due on the mortgage note held by Mrs. Belle Haralson; the taxes due the City of Lebanon and the State and County; and reported that it was to the manifest interest of Mrs. Carrie Freeman Martin that the house and lot be sold. On May 30, 1940, this report, to which no exception had been filed, was confirmed by decree, and the house and lot was sold for $3,100 and the assumption by the purchaser of 1940 taxes. The sale on terms of 1/3 cash and the balance in two and three years' time was made as authorized by the decree.

Some time after the confirmation of the sale, Mrs. Carrie Freeman Martin filed a petition in the County Court of Davidson County, where she was then living with her father and minor daughter, seeking a declaration that she was "restored in mind and capable of managing her own affairs." By decree of the County Court of Davidson County, on November 25, 1942, she was declared to be a person of sound mind and competent

to transact her own business. After this decree restoring her sanity on May 5, 1943, Mrs. Carrie Freeman Martin filed a petition for writ of error in this cause in the Court of Appeals at Nashville, with a transcript of the record.

On various grounds which we will consider hereafter, she sought to set aside the sale of the house and lot in Lebanon, Tennessee, to Mrs. Haralson. In an original opinion, and by denying two petitions to rehear, the Court of Appeals has affirmed the decree of the Chancellor and confirmed the sale.

The defendant, Carrie Freeman Martin, has filed petition for *certiorari*, which was granted, we have heard argument and the case is before us now for disposition on the assignments of error.

It is unnecessary to consider the assignments *seriatim* because we think a consideration of one of them determines the right of petitioner to a reversal. It is undisputed that when the house and lot of Defendant were sold through the Chancery Court, her guardian, Harry Ed Freeman, was the successful bidder. Between the time of the bid and the confirmation of the sale the guardian undertook to assign his rights to Mrs. J. W. (Belle) Haralson, and the decree of the Chancellor divested defendant of all title in and to the property, and vested title to said property in Mrs. J. W. (Belle) Haralson. The record shows not only that the guardian filed the bill as the result of which the property was sold, but also that he testified that the property was worth $5,000, which was some $1,900 more than the property brought at the sale when it was had.

Our Statutes prohibiting the purchase by a guardian of his ward's property under proceedings in Chancery Court, such as that before us here, are explicit and make

no exceptions whatever. The pertinent section of the Code is 9243:

"Who may not purchase.—No guardian, next friend, or witness, in such cause, shall purchase at such sale, or at any time afterwards, until five years from the removal of the existing disabilities; *and if any such person should make such purchase the original sale shall become void,* and the person under disability may bring ejectment for the land, as if no sale had been made." (Emphasis ours.)

Further, Code section 8506 provides:

"Disaffirmance.—The court may confirm or disaffirm the sale, and order a resale, according to its discretion; *but shall not confirm a sale to the guardian.*" (Emphasis ours.)

Conceding that, as found by the Chancellor and Court of Appeals, all parties Complainant acted in good faith and did not dispose of the defendant ward's property to defraud her, nevertheless, the foregoing section of the Code is mandatory in its inhibition that the court "*shall not confirm a sale to the guardian.*"

It is argued, speciously, we think, that because between the time of the bid and the sale, the guardian assigned his rights in the bid to Mrs. Haralson and the sale, was confirmed by vesting title in her, therefore the sale was not confirmed to the guardian. The essential element of the sale which fixed the interest of the ward in the sale, was the bid of the guardian, because the bid fixed the amount of money which would come into the ward's estate. That is exactly the interest that the cited Statutes were passed to protect. Obviously, to approve a transaction by which the guardian fixes the selling price and then, to evade the Statute, with a motive however worthy, has the title vested in a third party, is to nullify the Statute and defeat its essential purpose.

■ Further, by the express provision of section 9243, *supra,* the bid of the guardian was void. Being void, it was a nullity. From the bid there flowed no right that could legally be assigned or ratified. A contract made in disregard of statutory requirements is void beyond the power of subsequent ratification. *City of Memphis* v. *Memphis Gayoso Gas Co.,* 56 Tenn., 531. Cf. *Watterson* v. *City of Nashville,* 106 Tenn., 410, 424, 61 S. W., 782.

"Guardianship is recognized as a 'trust of the highest and most sacred character, and the trustee cannot be allowed by law to have any inducement to neglect his ward's interests.' 30 Am. Jur., page 128; *Brandau* v. *Greer,* 95 Miss. 100, 48 So., 519, 21 Ann. Cas., 1118. *It is likewise generally held that a guardian violates his fiduciary duty in acquiring by purchase, or otherwise, the property of his ward.* *Sorrels* v. *Childers,* 129 Ark., 149, 195 S. W., 1, L. R. A., 1917F, 430; *Hindman* v. *O'Connor,* 54 Ark., 627, 16 S. W., 1052, 13 L. R. A., 490; *Winter* v. *Truax,* 87 Mich., 324, 49 N. W., 604, 24 Am. St. Rep., 160; *Daniel* v. *Tolon,* 53 Okl., 666, 157 P., 756, 4 A. L. R., 704; *In re Filardo,* 221 Wis., 589 267 N. W., 312, 105 A. L. R., 438." *Meloy* v. *Nashville Trust Co.,* 177 Tenn., 340, 346, 149 S. W. (2d), 73, 75. (Emphasis ours.)

Since we hold that the sale made by the Chancery Court is void, the judgments of the Court of Appeals and the Chancellor are reversed and the case is remanded to the Chancery Court for further proceedings not inconsistent with this opinion. The complainants will pay the costs of the appeal.