# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE

FILED

**February 23, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| GENEVA GRAHL, | ) | **FOR PUBLICATION** |
| | ) | **Filed: February 23, 1998** |
| Appellant, | ) | |
| | ) | Blount Circuit |
| v. | ) | |
| | ) | Hon. W. Dale Young, |
| LILLIE DAVIS, | ) | Judge |
| | ) | |
| GREGORY SCOTT JUDKINS and | ) | |
| JEFFREY TODD JUDKINS, | ) | Appeal No. |
| | ) | 03S01-9701-CV-00011 |
| Appellees. | ) | |
| | ) | |

For Appellant:
David R. Duggan
DUGGAN & ANDERSON
Maryville, Tennessee

J. Michael Garner
NICHOLSON & GARNER
 Maryville, Tennessee

John A. Walker, Jr.
WALKER & WALKER, P.C.
Knoxville, Tennessee

For Appellees
Norman H. Newton
CRAWFORD, CRAWFORD & NEWTON
Maryville, Tennessee

Duncan V. Crawford
CRAWFORD, CRAWFORD, & NEWTON
Maryville, Tennessee

# O P I N I O N

COURT OF APPEALS AFFIRMED. DROWOTA, J.

The primary issue in this appeal is whether the conservator, Geneva Grahl, breached her fiduciary duty to the deceased conservatee, Lillie Davis, by allowing the conservatee's husband, Omer Davis, to transact four certificates of deposit in which the conservatee had an interest and reinvest the funds into certificates of deposit held either solely in the name of Omer Davis or jointly in the name of Omer Davis and Geneva Grahl. After carefully considering the controlling authority, we have determined that Grahl breached her fiduciary duty by allowing Omer Davis to transact the accounts without first seeking court approval, and by dealing with the conservatee's property so as to eventually attain a personal benefit. Accordingly, we affirm the judgment of the Court of Appeals reversing the judgment of the trial court, and remand this case for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

This case arises from the action of the trial court in approving a final accounting by Geneva Grahl in her capacity as conservator of the estate and person of Lillie Davis, who is now deceased. There are no material facts in dispute.

In May of 1989, Geneva Grahl, the daughter of Lillie Davis and Omer Davis, filed a complaint in the Circuit Court of Blount County asking the court to approve the sale of land owned by her parents as tenants by the entirety. Grahl alleged that her mother was confined to a nursing home and incompetent. Grahl also alleged that her father was in a nursing home, but that he could competently manage his own affairs. In June of 1989, Grahl amended her complaint to seek appointment as conservator over the person and estate of her mother, Lillie Davis. Notice of the amended complaint was served upon the defendants, Gregory Scott Judkins and Jeffrey Todd

Judkins, grandsons of Lillie Davis, the conservatee, and the only children of a deceased daughter of the conservatee. The defendants thereafter filed an answer.

A hearing was held on June 19, 1989, at which both Geneva Grahl and Omer Davis testified that the cash assets of Lillie Davis consisted of four certificates of deposit and a joint checking account for a total balance of $197,512.00. The next day, June 20, 1989, the trial court entered an order finding Lillie Davis incompetent and appointing Geneva Grahl conservator of both her person and estate. This order directed Grahl, as conservator, to file an inventory and bond in the amount of $135,000.00. By a separate order, the Court approved the sale of the jointly held property for $68,000.00 and directed that the proceeds be divided $34,000.00 to Omer Davis and $34,000.00, less expenses, to the conservatee, Lillie Davis.

On March 8, 1990, the conservator filed an inventory which showed the conservatee had total assets in financial institutions in the amount of $197,512.00, which consisted of a joint checking account, and four certificates of deposit. Three certificates were owned by "Omer Davis or Lillie Davis" and one certificate was owned by "Mr. Omer Davis, Trustee for Mrs. Omer Davis."

On June 19, 1990, the conservator filed the first annual accounting which covered the period June 19, 1989, the date of her appointment, through June 19, 1990. This accounting reflects itemized expenditures of $24,034.94 and indicates total assets in the conservatorship estate in the amount of $16,659.92. The conservatee's share of the proceeds from the court-approved sale of property are included in this figure.

-4-

The second page of this first accounting is the conservator's hand-written explanation of the disposition of the four certificates of deposit and the checking account shown on the conservator's original inventory. In summary, the conservator reported that Omer Davis had redeemed the certificates of deposit he had held jointly with or in trust for the conservatee and had used the proceeds to purchase four new certificates of deposit, two of which he held in the name of Omer Davis alone, and two of which he held jointly with the conservator. With respect to the joint checking account, the conservator explained that Omer Davis had utilized the remaining $1,167.71 in the account after a separate conservatorship account had been established.

Omer Davis died testate in Blount County on December 20, 1989, predeceasing his wife, the conservatee, Lillie Davis. His will provided in pertinent part, as follows:

> I hereby give, devise and bequeath to my daughter, GENEVA GRAHL, all my property, of whatever nature, or wherever located or situated, in Trust, for the use and benefit of my dear wife, Lillie Davis. The entire property is to be used for the best interest of my wife, and as far as possible in the same way and manner that I would do were I living.
>
> The trust shall continue for, and during the natural life of my dear wife, Lillie Davis, or as long as there are any assets left in the Trust. The Trust shall terminate upon the happening of the first of the events mentioned above.
>
> In the event that there is [sic] any assets left in the Trust after it is terminated as provided above, I give, bequeath the same to my daughter, GENEVA GRAHL, in its entirety, absolutely and in fee simple, without condition or limitation, it being her sole discretion to retain all of the assets or funds as hers, or to make any gifts of them which she may choose.
>
> I make this provision having great confidence that she will care for my dear wife in the same way and manner I would do were I living.

Following the death of Omer Davis, the conservator became the owner of two of the successor certificates of deposit by right of survivorship. With regard to the other two certificates of deposit held in the sole name of Omer Davis, the conservator, in accordance with her father's will, changed both into trust accounts in the name of "Lillie Davis, Geneva Grahl, Trustee." The interest earned on these two certificates was deposited into the conservatorship account and used on behalf of the conservatee. Grahl transferred funds between these accounts to obtain the best rate of interest, but the sum of the principal of the two accounts remained the same. The conservator did not use any of the principal from these two trust accounts for the conservatee's care. The conservator filed a second annual accounting on June 26, 1991, which reflected the interest from these two accounts as income. This accounting showed that the conservatorship estate had total assets in the amount of $3,871.11.[1]

Lillie Davis died intestate on October 5, 1991. Grahl was appointed and qualified as administratrix of her estate. Sometime in November of 1991, Grahl, in her capacity as conservator, filed a motion to approve a final accounting and transfer the remaining assets in the conservatorship estate to the administratrix. The final accounting indicated total assets in the conservatorship estate in the amount of $1,937.17.

---

[1]Though none of these documents bear a stamp from the clerk's office, reflecting the precise date of filing, the parties agree that the documents were filed with the clerk. However, no court action was taken on them.

On November 20, 1991, the trial court approved the final accounting and termination of the conservatorship. The defendants received no notice of the hearing or order approving the final accounting. On December 17, 1991, the defendants filed a motion to amend, alter, or modify the order, or in the alternative to grant a new trial on the motion to approve the final accounting. The trial court denied the motion, but the Court of Appeals reversed the denial and remanded the case for further proceedings, finding that the defendants "are entitled to be heard on the matter of the final accounting and settlement of the conservatorship."

The trial following remand focused on whether Grahl, as conservator, had breached her fiduciary duty by allowing Omer Davis to transact the certificates of deposit and purchase other certificates which did not reflect the conservatee's ownership interest. The conservator testified that Omer Davis had been diagnosed with cancer in November of 1988 and that he had been told by physicians that the cancer would likely be fatal within two years. Because of his deteriorating physical health, Omer Davis moved out of his home and into the same nursing home where Lillie Davis was already residing. This move culminated in the petition to sell the jointly owned property which was converted to a conservatorship proceeding.

Grahl testified that at the time of the conservatorship proceeding, and later, when the inventory was filed, the deceased conservatee and her husband, Omer Davis, held three certificates of deposits in the name of "Omer or Lillie Davis" and a fourth certificate of deposit in the name of "Omer Davis, Trustee for Mrs. Omer Davis."

Consistent with the summary attached to the first annual accounting, Grahl testified that, after her appointment as conservator, Omer Davis, on June 22, 1989, redeemed First Tennessee Bank certificate of deposit number 219244, which was owned by "Omer Davis or Lillie Davis." He combined the proceeds from the certificate, $69,485.35, with additional funds and purchased another First Tennessee Bank certificate of deposit in the amount of $100,000.00, in the name of "Omer Davis or Geneva Grahl," as joint tenants with the right of survivorship.

On June 28, 1989, Omer Davis redeemed First American National Bank certificate of deposit number 0096463, which was held in the name of "Omer Davis or Lillie Davis." He received a cashier's check payable to "Omer Davis or Lillie Davis" in the amount of $28,530.72. He negotiated the cashier's check at First Federal Savings and Loan Association of Maryville, combined it with other funds he had at that institution, and purchased a First Federal certificate of deposit in the amount of $90,983.90, in the name of "Omer Davis or Geneva Grahl," as joint tenants with right of survivorship.

On August 17, 1989, Omer Davis transferred the entire balance in the amount of $84,816.87 from the First Federal Savings and Loan Association of Maryville certificate of deposit number 1207825, which was held in the name of "Mr. Omer Davis, Trustee for Mrs. Omer Davis," to a new First Federal certificate of deposit held solely in the name of "Omer Davis."

Finally, on August 17, 1989, Omer Davis redeemed First Tennessee Bank certificate of deposit number 0109679, which was held in the name of "Omer Davis

or Lillie Davis." He deposited the proceeds in the amount of $13,723.59 into an existing joint savings account at First Tennessee Bank in the names of "Omer Davis or Geneva Grahl." These proceeds remained on deposit for less than a month, until Geneva Grahl withdrew the proceeds, and additional funds from the account, and purchased a new certificate of deposit at First Tennessee in the amount of $15,000.00, which was held in the sole name of "Omer Davis."

Grahl testified that she drove her father to the financial institutions and accompanied him when he accomplished these transactions. It is undisputed that Omer and Lillie Davis were married at the time these transactions were effected. Grahl testified that she had realized Omer Davis was transacting certificates of deposit which reflected the conservatee's ownership interest and transferring the funds to certificates of deposit which did not reflect the conservatee's ownership interest. Grahl testified that she had taken no action to stop Omer Davis from completing these transactions. When asked why she had not taken any action, Grahl replied that her father had known the consequences of his actions and could not be easily dissuaded after he had decided on a course. Grahl also said that she had been unaware that she was supposed to do anything to stop him. Grahl had become the owner of two of the successor certificates of deposit by right of survivorship upon the death of her father, and she had become the owner of the two successor trust accounts after the death of the conservatee, her mother, under the terms of her father's will.

With respect to the joint checking account listed on the inventory of the conservatorship assets, Grahl testified that it had been utilized by her father for his

personal purposes, and she had opened a separate conservatorship account. After her appointment as conservator, Grahl's name had been added to the joint account so that she could write checks on it if needed. Following the death of Omer Davis in 1989, the conservator expended several hundred dollars from the joint account on behalf of the conservatee. Thereafter, she transferred the remaining balance in the amount of $396.17, from the joint account to the conservatorship account.

The defendants also testified at the hearing and said that they had no knowledge of undue influence or fraud on the part of the conservator in relation to the transactions involving the certificates of deposit. The defendants testified that they had seldom seen their grandparents in the years preceding their death.

Based upon this proof, the trial court again granted Grahl's motion and entered an order approving the final accounting and transfer of the funds to the administratrix of the probate estate of Lillie Davis. In so holding, the trial court stated that the conservator had committed no fraud or undue influence and that Omer Davis had the unquestioned authority to engage in the transactions involving the accounts in this case. The Court of Appeals reversed the trial court's judgment, finding that three of the certificates of deposit purchased by Omer Davis with funds from the joint accounts of Omer and Lillie Davis remained property owned by them as tenants by the entirety, even though the conservatee's name did not appear on the successor instruments. As to the funds in the fourth trust certificate which had been transferred to Omer Davis, the intermediate court held that the conservator had a duty to act to protect the interest of the conservatee. Thereafter, we granted permission to appeal to determine whether the conservator violated her fiduciary duty to the conservatee.

-10-

On the separate grounds stated below, we affirm the judgment of the Court of Appeals.

## FIDUCIARY DUTIES

We begin our analysis with a brief review of the fiduciary duties which govern the actions of a conservator. The purpose of appointing a conservator is "to preserve the estate of an incompetent or disabled person." Tenn. Code Ann. § 34-4-202 (1991 Repl.).[2] Pursuant to Tenn. Code Ann. § 34-4-207 (1991 Repl.), a conservator "shall have the same duties and powers as a guardian of a minor, and all laws related to the guardianship of a minor shall be applicable to a conservator." A conservator occupies a fiduciary position of trust of the highest and most sacred character. See Meloy v. Nashville Trust Co., 177 Tenn. 340, 149 S.W.2d 73 (1941). The conservator is to manage the conservatee's estate to the best advantage. See Steele v. Reese, 14 Tenn. (6 Yer.) 263 (1834). The conservator should endeavor to manage the estate so that if the incompetent person recovers, he or she will find the estate as nearly as possible in the same condition as he or she left it. Folts v. Jones, 175 Tenn. 74, 132 S.W.2d 204, 208 (1939). A conservator should not change the character of the conservatee's property interests unless the change is necessary to protect and promote the interests of the conservatee. Id. In considering a conservator's request to cash a life insurance policy for the benefit of the conservatee's estate, this Court, in Folts v. Jones, stated:

---

[2]We are aware that Tenn. Code Ann. §§ 34-4-101 through 34-4-310 have been repealed and replaced with Tenn. Code Ann. §§ 34-11-101 through 34-13-109, which became effective January 1, 1993. However, this circumstance was not raised by the parties in the Court of Appeals or in this Court. Therefore, statutory citations are to the Code provisions in effect prior to January 1, 1993. However, in our view, the new law would not change the outcome of this appeal.

-11-

> Before the character of the interest in property held by a [conservatee] can be changed, it must be made manifest that it is necessary to protect and promote his interest. Although as a rule, the court will preserve, as far as possible, the interests of the succession, this rule yields to the paramount rule which makes the [conservatee's] welfare the first consideration without regard to the rights of those who may have eventually rights to succession.

Id.; see also Morris v. Morris, 195 Tenn. 133, 258 S.W.2d 732 (1953).

A conservator is not the alter ego of the conservatee, however, and has no authority to exercise an elective right or power of the conservatee. Folts, 132 S.W.2d at 207. Therefore, a conservator has no authority to terminate joint accounts in which the conservatee has an interest or to change a beneficiary on a life insurance policy. Folts, 132 S.W.2d at 207; see also Howard v. Imes, 90 So.2d 818 (Ala. 1956); In Re: Estate of Wright, 424 N.W.2d 268 (Mich. 1988); Hendricks v. Grant County Bank, 379 P.2d 693, 697 (Okla. 1963); Matter of Guardianship of Rich, 520 N.W.2d 63 (S.D. 1994); Rozycke v. Sroka, 279 N.E.2d 155 (Ill. Ct. App. 1972); Matter of Estate of Briley, 825 P.2d 1181 (Kan. Ct. App. 1992); Maess v. Greenfield, 547 S.W.2d 777 (Ky. Ct. App. 1977); Strain v. Rossman, 614 P.2d 102 (Or. App. 1980). Instead, the conservator must petition the court, and the court, on behalf of the conservatee, can exercise such an election if it is clearly proven to be in the best interests of the conservatee. Folts v. Jones, 132 S.W.2d at 207; see also Schlieper v. Rust, 360 N.E.2d 1192, 1197 (Ill. Ct. App. 1977); Rozycke v. Sroka, 279 N.E.2d at 158.

A conservator owes the conservatee an undivided duty of loyalty. 18 Tenn. Juris., Mentally Ill and Other Incompetents, § 8, p. 323 (1984). The conservator cannot be allowed by law to have any inducement to neglect the interests of the

conservatee. <u>Freeman v. Martin</u>, 181 Tenn. 470, 181 S.W.2d 745, 746 (1944). Therefore, it is generally held that a conservator violates his or her fiduciary duty by acquiring, by purchase or otherwise, the property of the conservatee. <u>Id</u>.; <u>see</u> <u>also</u> <u>Lanius v. Donnell</u>, 222 Tenn. 158, 432 S.W.2d 659 (1968).

Having generally described the fiduciary obligations of a conservator toward the property and estate of the conservatee, we must next consider whether the conservatee had a proprietary interest in the certificates of deposit and the joint bank account. To that end, we begin with the well-settled proposition that tenancy by the entirety is a form of property ownership which is unique to married persons. <u>Griffin v. Prince</u>, 632 S.W.2d 532, 534 (Tenn. 1982). The essential characteristic of a tenancy by the entirety is that "each spouse is seized of the whole or the entirety and not of a share, moiety, or divisible part." <u>Sloan v. Jones</u>, 192 Tenn. 400, 241 S.W.2d 506, 507 (1951). Upon the death of one spouse, ownership of tenancy by the entirety property immediately vests in the survivor, and the laws of descent and distribution do not apply. <u>Id</u>. at 509. It is well-settled in this state that personal property as well as realty may be owned by spouses by the entirety. <u>Griffin</u>, 632 S.W.2d at 535. It has also been expressly held that a tenancy by the entirety with the right of survivorship may exist in certificates of deposit and bank accounts. <u>White v. Watson</u>, 571 S.W.2d 493, 495 (Tenn. App. 1978); <u>Smith v. Haire</u>, 133 Tenn. 343, 181 S.W. 161 (1915) (certificates of deposit); <u>Sloan</u>, <u>supra</u>, and <u>Griffin</u>, <u>supra</u>, (bank accounts). In fact, there is clear authority in this state that a bank account or negotiable instrument in the name of "husband or wife" will be deemed to create a tenancy by the entirety with right of survivorship, in the absence of proof to the contrary. <u>Griffin</u>, 532 S.W.2d at 536.

-13-

Applying these longstanding principles to the facts in this case, it is clear that when the conservator filed the inventory, three of the certificates of deposit and the joint bank account were held by Lillie Davis and Omer Davis as tenants by the entirety, with right of survivorship. There is no proof to the contrary in this record. The fourth certificate of deposit was held by Omer Davis, as trustee for the conservatee, Lillie Davis. Therefore, the conservatee had a proprietary interest in the certificates of deposit and in the joint checking account. Further, that interest was listed as an asset of the conservatorship estate on the initial inventory. From the very beginning, therefore, the conservator had a duty to preserve the conservatee's property interest in those assets. We must next determine if the conservator breached her fiduciary duty when she allowed and assisted Omer Davis to transact the certificates of deposit and utilize the joint checking account.

Relying upon a decision of the Court of Appeals, Mays v. Brighton Bank, 832 S.W.2d 347 (Tenn. App. 1992), perm. app. denied, the conservator argues that Omer Davis, as one of the entirety tenants, had the right to redeem the certificates of deposit, reduce the entire amount to his separate possession, and reinvest the proceeds. According to the conservator, under such circumstances, the divested spouse can recover the funds only if fraud is alleged and proven. She asserts that the defendants have neither alleged nor proven fraud in this case, and therefore are not entitled to recover the funds.

Relying upon this Court's decisions in Griffin and Sloan, the defendants respond that the conservatee's interest was not defeated because money withdrawn from a tenancy by the entirety account is impressed with the entirety provision. The

defendants also claim that the conservator's reliance upon <u>Mays</u> is misplaced because <u>Mays</u> is factually distinguishable and inconsistent with this Court's decisions in <u>Griffin</u> and <u>Sloan</u>.[3]

The conservator fails to recognize that this case does not involve a dispute between two competent persons over funds withdrawn from a tenancy by the entirety account. In our view, resolution of this appeal does not depend upon the rights of Omer Davis. Instead, resolution of this appeal depends upon whether the conservator violated her fiduciary duties by allowing and assisting Omer Davis to transact and utilize accounts in which the conservatee had an interest. Evaluating the conservator's actions and inaction in light of the fiduciary obligations previously delineated, we clearly must answer that question in the affirmative.

Whatever the rights of Omer Davis, Grahl had a fiduciary obligation to protect and conserve the assets of the conservatee. Grahl owed a duty of undivided loyalty to the conservatee. Moreover, Grahl had no authority to change the character of the conservatee's property interests unless the change had been necessary to protect

---

[3]We note that in <u>Sloan</u> this Court, in considering whether an account payable to "husband or wife" created a tenancy by the entirety, quoted with approval the following passage from a Pennsylvania case, "Where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, <u>but the money thus withdrawn is impressed with the entirety provision that it is the property of both, and any one dealing with such specific property as severalty, knowing it belongs to both, must submit to the consequences.</u>" <u>Sloan</u>, 241 S.W.2d at 508-509 (emphasis added and internal quotations omitted), quoting <u>Madden v. Gosztonyi Sav. & Trust Co.</u>, 200 A. 624, 630 (Pa. 1938). This passage was again quoted and reaffirmed in the more recent case of <u>Griffin v. Prince</u>, 632 S.W.2d at 536.

The intermediate court in <u>Mays</u> characterized the legal status of property purchased with tenancy by the entirety funds as a question of first impression. That precise question was not at issue in <u>Sloan</u> and <u>Griffin</u>, so technically, the characterization is correct. The intermediate court decided the issue by rejecting the decision of the Pennsylvania Supreme Court, quoted with approval in <u>Sloan</u> and <u>Griffin</u>, and by adopting instead the position of the Arkansas courts that funds withdrawn by one spouse from a tenancy by the entirety account are not impressed with the entirety provision and can not be recovered by the other spouse absent a showing of fraud. <u>Mays</u> appears to be inconsistent with this Court's prior decisions. However, we need not reach this issue to resolve this appeal.

and promote the interests of the conservatee. The proof in this record established that the principal amount of the certificates of deposit were never utilized to meet the needs of the conservatee. Even if a conservator deems it necessary to change the character of property to meet the needs of the conservatee, the appropriate course of action is to seek court approval. Folts, 132 S.W.2d at 207.[4] If a conservator has no authority to change the nature of the conservatee's interest for the benefit of the conservatorship estate, certainly a conservator has no authority to act or fail to act so that the conservatee's interest is completely extinguished, with no benefit to the conservatorship estate. Therefore, when Omer Davis expressed his desire to transact the certificates of deposit, as conservator, Grahl was obligated to seek guidance from the trial court. This proposition applies with equal force to both the certificates of deposit held jointly by Omer and Lillie Davis and to the certificate held by Omer Davis as Trustee for Mrs. Omer Davis. Accordingly, Grahl had no authority to consent to the withdrawal of the funds on behalf of the conservatee, and violated her fiduciary duty by failing to petition the trial court for guidance.[5]

Moreover, in this case, Grahl personally benefited by allowing Omer Davis to transact the certificates of deposit. Grahl was named as the joint tenant with right of survivorship on two of the successor certificates of deposit. Therefore, Grahl became the owner of those funds immediately upon the death of Omer Davis. By virtue of the fact that Omer Davis changed the other two successor certificates of deposit into his

---

[4]See Tenn. Code Ann. 34-11-115(c) (1997 Repl.), which specifically requires a conservator to seek court approval before changing the nature of a conservatee's investment.

[5]Seeking guidance from the trial court was particularly important in this case because, on January 10, 1989, Omer Davis had executed a power of attorney appointing Geneva Grahl attorney in fact. The dual capacity in which Grahl was functioning, attorney-in-fact for Omer Davis and conservator for Lillie Davis inherently, posed a conflict of interest with respect to the assets in which they both held interests.

name alone, they passed through his will to Grahl to be held in trust for the conservatee, Lillie Davis. Upon the death of the conservatee, Grahl became the owner of these funds. By allowing Omer Davis to transact the certificates of deposit, Grahl eventually acquired legal ownership of the funds which otherwise would have passed to the conservatorship estate, by right of survivorship, upon the death of Omer Davis. Therefore, Grahl violated her fiduciary duty by acquiring the property of the conservatee.[6]

Moreover, contrary to the conservator's assertion, damages arose as a result of the breach of her duties. Though the proof is undisputed that the personal needs of the conservatee were fully satisfied, the proof also clearly demonstrates that the assets in the estate of the conservatee substantially decreased as a result of the action and inaction of the conservator. Since Grahl was functioning as conservator of the person *and estate* of Lillie Davis, she was duty bound to carefully manage the estate in addition to providing for the personal needs of the conservatee.

## CONCLUSION

Having determined, for the reasons previously explained, that the conservator breached her fiduciary duties by allowing Omer Davis to redeem the certificates of deposit without first seeking court approval, and by dealing with the conservatee's property so as to eventually attain a personal benefit, we affirm the judgment of the

---

[6]In so holding, we do not by any means imply that Grahl acted in bad faith or fraudulently. In fact the proof in this case, including the testimony of the defendants, indicates that she did not. However, when she was appointed conservator, she was then bound to act in accordance with the duties imposed by law upon all fiduciaries. The good faith of a conservator does not justify a breach of those strict legal requirements.

Court of Appeals reversing the judgment of the trial court approving the final accounting of the conservator. This cause is remanded to the trial court for a new and correct final accounting under which the conservator shall be required to restore to the conservatorship estate of Lillie Davis the total amount of the four certificates of deposit when redeemed in 1989 and interest earned on that sum from the dates of redemption to the date of restoration to the conservatorship estate. The conservator shall also be required to account for the amount of funds held in the joint checking account at the time of the initial accounting, $1,167.71, and restore to the conservatorship estate any portion of that amount for which a proper accounting is not provided. The trial court shall allow a set off for the interest that was deposited to the conservatorship estate after the date of redemption of the certificates of deposit.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**

Anderson, C. J.
Reid, Birch, Holder, JJ.