# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| MARY M. PAWLAKOS, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | Stewart Chancery-Probate No. P2-024 |
| | ) | |
| VS. | ) | Appeal No. 01A01-9708-CH-00443 |
| | ) | |
| LAURIE WATSON PAWLAKOS, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

**FILED**

December 2, 1998

Cecil W. Crowson
Appellate Court Clerk

APPEAL FROM THE CHANCERY-PROBATE COURT OF STEWART COUNTY
AT DOVER, TENNESSEE
THE HONORABLE ALLEN W. WALLACE, CHANCELLOR

**ROBERT H. MOYER**
**RUDOLPH, ROSS & FENDLEY, P.L.L.C.**
Clarksville, Tennessee
Attorney for Appellant

**DAN R. BRADLEY**
Waverly, Tennessee
Attorney for Appellee

**AFFIRMED IN PART, REVERSED IN PART
AND REMANDED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Respondent Laurie Watson Pawlakos (the Wife) appeals the trial court's order requiring her to return certain funds to the estate of her deceased husband, John T. Pawlakos (the Decedent). For the reasons hereinafter stated, we affirm in part and reverse in part the trial court's judgment.

## I. Factual and Procedural History

The Decedent and the Wife had a nine-year relationship which culminated in their marriage on May 5, 1995. At the time of their marriage, the Decedent and the Wife knew that the Decedent was terminally ill with cancer. Approximately one month before his death, the Decedent and the Wife visited a branch of First American Bank where they signed the necessary signature cards to convert two of the Decedent's individual bank accounts into joint bank accounts. The account code on the signature cards indicated that the accounts were held as "joint tenants with right of survivorship."

By check dated May 20, 1995, the Wife withdrew $60,000 from one of the joint accounts and deposited the funds into her personal bank account. The Wife filled out the check, but the Decedent signed it. On June 14, 1995, two days after the Decedent's death, the Wife withdrew another $5,000 from the joint account.

In addition to withdrawing funds from the joint account, the Wife also withdrew funds from an account bearing the name of the Decedent's brother, Peter F. Pawlakos. Although the account bore the name of Peter Pawlakos, the Decedent opened the account, and he treated the funds in the account as his own. By check dated May 20, 1995, the Wife withdrew $6,000 from the Peter Pawlakos account. By check dated May 23, 1995, the Wife used $3,372.35 of the funds in the Peter Pawlakos account to pay her Optima credit card bill. The Wife signed Peter Pawlakos's name to both checks. According to the Wife, both of these checks were written at the direction of the Decedent. After the Decedent's death, the Wife withdrew the remaining $1,560.31 in the Peter Pawlakos account.

2

The Decedent died on June 12, 1995. Thereafter, Mary M. Pawlakos, the Decedent's sister and one of the beneficiaries under the Decedent's will, filed a petition in probate seeking to recover the foregoing funds allegedly converted by the Wife, as well as other relief. After conducting a bench trial, the trial court entered a judgment which, inter alia, required the Wife to return the funds from the joint account and from the Peter Pawlakos account to the Decedent's estate. In requiring the Wife to return the funds from the joint account, the trial court found by clear and convincing evidence that the Decedent did not intend to create a joint account with right of survivorship when he signed the signature card converting his bank account from an individual to a joint account. With regard to the funds from the Peter Pawlakos account, the trial court reasoned that, regardless of the name appearing on the account, all of the evidence at trial indicated that these funds belonged to the Decedent. This appeal by the Wife followed.

## II. Funds from the Joint Account at First American Bank

The trial court apparently based its ruling with regard to the joint account on our supreme court's holding in Lowry v. Lowry, 541 S.W.2d 128 (Tenn. 1976):

> Absent clear and convincing evidence of contrary intent expressed at the time of its execution, . . . a bank signature card containing an agreement in clear and unambiguous language that a joint account with rights of survivorship is intended, creates a joint tenancy enforceable according to its terms; and upon the death of one of the joint tenants, the proceeds pass to the survivor.

Lowry, 541 S.W.2d at 132. In the present case, the signature card signed by the Decedent and the Wife clearly described the account as "joint tenants with right of survivorship." Accordingly, if the rule set forth in Lowry applies to this case, then the proceeds of the account passed to the Wife upon the Decedent's death unless clear and convincing evidence exists that the Decedent had a contrary intent at the time he executed the signature card.

Since our supreme court decided Lowry, however, the legislature amended Tennessee Code Annotated section 45-2-703 to add, inter alia, the following provision:

3

> A designation of "joint tenants with right of survivorship," or substantially similar language, shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor.

T.C.A. § 45-2-703(e)(1) (1993). This provision applies to accounts created on or after January 1, 1989. See T.C.A. § 45-2-703(g) (1993).

In In re Estate of Nichols, 856 S.W.2d 397 (Tenn. 1993), the supreme court noted the new subsection's use of the term "conclusive evidence," but the court then proceeded to discuss and apply Lowry because six of the seven certificates in that case were in existence prior to January 1, 1989. Nichols, 856 S.W.2d at 399. More recently, this court interpreted the foregoing provision and held that, despite the use of the term "conclusive evidence," the amended statute did not foreclose all attacks on accounts designated as joint accounts with right of survivorship. In re Estate of Holmes, No. 02A01-9707-PB-00158, 1998 WL 134333 (Tenn. App. Mar. 26, 1998). Relying on Nichols, we reasoned:

> Before dealing with [the] issues, the court would like to clarify what law it considers to be applicable and what law it considers to be inapplicable. Claimant relies heavily upon some of the language of T.C.A. § 45-2-703(e)(1) (1993), wherein she contends that where there is language in a joint account card designating "joint tenant with right of survivorship" or language similar thereto, as stated in subsection (e)(1) it "shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor." (emphasis supplied). We are of the opinion that claimant's reliance upon this statute is misplaced.
>
> First of all, it has been held by the eastern section of this court that T.C.A. § 45-2-703 was initially enacted for the protection of the bank, absolving a bank of liability upon its payment to either joint tenant or the survivor. See Leffew v. Mayes, 685 S.W.2d 288, 291 (Tenn. Ct. App. 1984).
>
> This code section was revisited by our supreme court in In re Estate of Nichols, 856 S.W.2d 397 (Tenn. 1993). In Nichols the court considered the ownership of seven certificates of deposit issued to joint tenants with right of survivorship. Six were issued prior to the effective date of [the 1989 amendment to section 45-2-703], while one was issued after its effective date. In holding that the first six were to be construed in light of the law as established in Lowry v. Lowry, 541 S.W.2d 128 (Tenn. 1976), and one in accordance with the amendment to § 45-2-703, the court did not suggest that the word "conclusive" in the 1989 amendment foreclosed any and all attacks on the questions of intent and ownership. The supreme court noted that the Lowry court held that "[a]bsent

4

clear and convincing evidence of contrary intent expressed at the time of its execution, . . . clear and unambiguous language" on a bank's signature card is sufficient proof of the joint account and the surviving tenant's ownership of the proceeds. Lowry, 541 S.W.2d at 132.

The [Nichols] court further noted that Lowry also stood for the proposition that "[t]he establishment of a joint bank account creating a joint tenancy with right of survivorship in clear and unambiguous language is subject to the parol evidence rule and is generally immune from attack in the absence of fraud, misrepresentation, duress, undue influence, mutual mistake, and incapacity.["] Nichols, 856 S.W.2d at 400 (citing Lowry, 541 S.W.2d at 133) (emphasis supplied).

The [Nichols] court found that there was "no evidence of fraud or other circumstances that would vitiate the agreements." Nichols, 856 S.W.2d at 400. . . . In essence the [Nichols] court found that where there is no evidence in the record addressing such claims as fraud, undue influence or lack of capacity, § 45-2-703(e)(1) will provide conclusive evidence of intention of the parties. Otherwise, the rules laid down in Lowry and acknowledged in Nichols remain the law.

Holmes, 1998 WL 134333, at *2.

Our opinion in Holmes suggests that any changes in the law effected by section 45-2-703(e)(1) are subtle ones. Arguably, the rule set forth in Lowry makes it easier for a party to attack such a joint account by presenting evidence that the creator of the account did not really intend to create an account with survivorship rights, while the rule set forth in section 45-2-703(e)(1) requires a showing of a more substantial claim, such as fraud, undue influence, or lack of capacity. Nevertheless, we find it unnecessary to elaborate further on any distinctions between the law as set forth in Lowry and that set forth in the amended statute. As discussed below, we conclude that, regardless of which standard applies, the Petitioner's attack on the joint account created in this case must fail because the record fails to contain clear and convincing evidence that the Decedent did not intend to create a joint account with right of survivorship.

In claiming that the Decedent did not intend to create a joint account with right of survivorship, the Petitioner relied primarily on (1) the Wife's testimony as to the purpose in creating the joint account on May 12, 1995, and (2) the circumstances surrounding the

5

Decedent's execution of his will on May 24, 1995. With regard to the purpose for creating the joint account, the Wife gave the following testimony:

Q    Now, tell me about the day that you signed these cards. What was the purpose for adding your name to the account?

A    It was -- We got married. It was just something we did because we got married. . . .

Q    Well, did you know up there that day that you were signing this account called joint tenants with right of survivorship?

A    It wasn't something that - you know, that I requested. We told them we had gotten married, we needed to convert the account to joint, and the guy did the paperwork.

Q    You said that - you told him that you needed to create a joint account?

A    Well, we had gotten married and they - we needed to convert it to joint or - I don't - I really can't recall my exact words.

Q    But now do you remember if the words joint tenants with right of survivorship was mentioned that day?

A    No, I don't recall.

Q    Did you and John know what joint tenants with right of survivorship was?

A    I don't think so, I don't think it ever was an issue.

Q    I mean, now you testified in your deposition that for sure you didn't - that John did not know what right of survivorship was?

A    I believe that inasfar as signing the signature cards, it was not - we didn't go to the person, I'm quite sure, and say, we need joints with - you know, right to survivorship, we told them we got married.

Q    And then that person didn't bring it up and you all didn't bring up survivorship?

A    I don't believe so.

Q    And you testified in your deposition though that you didn't know what joint tenants with right of survivorship was, nor did John?

A    We weren't aware of it in that - I guess in that context, it didn't - it wasn't - it wasn't a point of focus for us.

6

The Petitioner contends that the foregoing testimony reveals that the Decedent had no intention of creating a joint account with right of survivorship. The Petitioner additionally contends that the circumstances surrounding the Decedent's execution of his will belie any intent to create a joint account with right of survivorship. When the Decedent executed his will twelve days after creating the joint account, he attempted to make bequests to various friends and relatives totaling $85,000. Without the funds contained in the joint checking account, however, the Decedent's estate lacked sufficient funds to satisfy all of the bequests. Based on this evidence, the Petitioner argues that the Decedent must have believed the funds in the First American Bank account to be his individual funds which would become part of his estate rather than funds which would pass directly to the Wife upon his death.

Although the trial court apparently found this proof to be persuasive evidence of the Decedent's intent, or lack thereof, in creating the joint checking account, we conclude that the evidence fails to rise to the level of clear and convincing evidence required to prevent the funds from passing directly to the Wife. When a husband and wife create a joint bank account, the law presumes that they have created a tenancy by the entirety carrying with it the right of survivorship. Grahl v. Davis, 971 S.W.2d 373, 378 (Tenn. 1998); Edwards v. Edwards, 713 S.W.2d 642, 647 (Tenn. 1986), cert. denied, 479 U.S. 1024 (1987); Griffin v. Prince, 632 S.W.2d 532, 536-37 (Tenn. 1982); Sloan v. Jones, 241 S.W.2d 506, 508-09 (Tenn. 1951). Thus, absent evidence that they intended to create a different type of joint account, the husband and wife own the funds in the account as tenants by the entirety. Grahl v. Davis, 971 S.W.2d at 378; Edwards v. Edwards, 713 S.W.2d at 647; Griffin v. Prince, 632 S.W.2d at 536-37; Sloan v. Jones, 241 S.W.2d at 510. Upon the death of one spouse, ownership of the funds "immediately vests in the survivor, and the laws of descent and distribution do not apply." Grahl v. Davis, 971 S.W.2d at 378.

Here, the Wife testified that neither she nor the Husband discussed any survivorship rights associated with the account they were creating. Any lack of intent which this testimony might exhibit, however, is not dispositive because the law presumes that they

7

created a specific type of joint account with right of survivorship, i.e. a tenancy by the entirety. Although the Decedent and the Wife might not have discussed this issue prior to creating the joint account, we find it significant that the evidence surrounding their creation of the account does not reveal a contrary intent. For example, the record contains no evidence that the Decedent and the Wife intended to create a different type of joint account having no right of survivorship. Inasmuch as the record is silent on this issue, and inasmuch as the signature card indicates that the joint account is one with survivorship rights, we must presume that the Decedent and the Wife intended to create such an account.

We also are unable to conclude that the circumstances surrounding the Decedent's execution of his will constitute clear and convincing evidence that the Decedent intended to create something other than a joint account with right of survivorship. The evidence was undisputed that, on the day prior to the Decedent's execution of the will, the Wife informed him that he did not have enough money to satisfy the bequests proposed in the will. Both the Wife and the Petitioner testified that such a conversation took place. Despite being advised of the shortage, the Decedent executed the will the next day after assuring his attorney that the will conformed with his wishes. Although the evidence is unclear as to why the Decedent insisted on signing his will after being advised of the shortfall, this undisputed testimony tends to support, rather than to undermine, the conclusion that the Decedent knew the funds in the joint account would not become part of his estate. Moreover, even without the funds in the joint account, the Decedent still had significant funds totaling at least $68,151.11, including $57,211.65 in a Charles Schwab investment account and $10,939.46 in a bank account bearing the name of his brother, Peter F. Pawlakos. Under these circumstances, we conclude that the bequests set forth in the Decedent's will do not constitute clear and convincing evidence that the Decedent intended for the funds in the joint account to become part of his estate rather than to pass directly to his surviving spouse.

In any event, even if the Decedent and the Wife did not intend to create a joint account with right of survivorship, this fact would have no bearing on the Wife's receipt of the bulk of the funds from the joint account. It was undisputed that the Decedent signed the $60,000 check in favor of the Wife, and there is no contention that this signature was obtained by fraud or undue influence. Because the Decedent transferred these funds to the Wife during his lifetime, any discussion regarding their disposition after the Decedent's death becomes irrelevant. See, e.g., In re Estate of Haynes, 835 S.W.2d 19, 20-21 (Tenn. App. 1992).

In asking this court to affirm the trial court's judgment in its entirety, the Petitioner cites testimony in the record wherein the Decedent's relatives criticized the Wife for the manner in which she cared for the Decedent in his final days and for the manner in which she handled the Decedent's finances prior to and after his death. We question the legal relevance of this testimony, however, because the Petitioner does not contend that the Wife obtained the disputed funds by fraud or undue influence. Instead, the Petitioner insists that the record contains clear and convincing evidence that the Decedent did not intend to create a joint account with right of survivorship. Inasmuch as the record contains scant evidence to support such a claim, we hold that the Petitioner's argument with regard to the funds in the joint account must fail and that the trial court's judgment must be reversed as to this issue.

### III. Funds from the Peter Pawlakos Account

We reach a different result with regard to the funds in the Peter Pawlakos account. In essence, the Wife admitted that the funds in the Peter Pawlakos account belonged to the Decedent and that, unlike the other account at issue, the account was not jointly owned by her and the Decedent. We believe that this admission provides a sufficient basis for the trial court's order requiring the Wife to return these funds to the Decedent's estate.

9

On appeal, the Wife contends that these funds were gifts from the Decedent during his lifetime. This appears to be a credibility issue which the trial court resolved against the Wife and in favor of the Petitioner. In light of the Wife's acknowledgment that she signed Peter Pawlakos's name on the checks, we conclude that the evidence does not preponderate against the trial court's implicit finding that the funds were not gifts from the Decedent. See T.R.A.P. 13(d).

We likewise reject the Wife's contention that the Peter Pawlakos account cannot properly be considered part of the Decedent's estate because the account was not in the Decedent's name. As previously indicated, the Wife acknowledged that the funds in the Peter Pawlakos account belonged to the Decedent. Accordingly, she cannot now be heard to complain that the funds do not belong to the Decedent's estate.

## IV. Conclusion

We reverse that portion of the trial court's judgment requiring the Wife to return funds totaling $69,517.75 from the Wife's and the Decedent's joint account at First American Bank. In all other respects, the trial court's judgment is hereby affirmed, and this cause is remanded for further proceedings consistent with this opinion. Costs on appeal are taxed to the Petitioner, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.

10